[No. B037597. Second Dist., Div. Seven. Apr. 24, 1990.]

JONG T. HUANG, Petitioner and Appellant, v.
BOARD OF DIRECTORS, ST. FRANCIS MEDICAL CENTER et
al., Defendants and Respondents.

**COUNSEL**

Robert D. Walker for Petitioner and Appellant.

Weissburg & Aronson, Kenneth M. Stern and Patricia Y. Miller for Defendants and Respondents.

OPINION

LILLIE, P. J.—Jong T. Huang, a licensed and practicing physician, appeals from a judgment denying his petition for writ of mandate (Code Civ. Proc., § 1094.5) to compel St. Francis Medical Center (hospital) to set aside its order suspending his medical staff privileges for six months and imposing conditions upon his resumption of staff privileges at the conclusion of the suspension.

FACTUAL AND PROCEDURAL BACKGROUND

*Hospital Proceedings*

On February 23, 1987, Sandra Taylor, a registered nurse employed by the hospital, wrote a memorandum to Dr. Celso Chavez, chief of staff, stating that on February 23 she saw Dr. Huang examine a patient in the hospital lobby and that such conduct was "totally unacceptable medical practice." Nurse Taylor subsequently wrote another memorandum (to Dr. Chavez and Sister Elizabeth Keaveney, president of the hospital) complaining that Dr. Huang had threatened her, telling her that "something [was] going to happen to" her if she refused to retract the charge made in her first memorandum. On March 18, 1987, Nurse Taylor was served with process in a small claims court action brought against her by Dr. Huang to secure a judicial determination that he did not examine a patient in the lobby and to have Taylor's accusation that he did so removed from his file. At the hearing on the action (Mar. 26, 1987) Dr. Huang was told that small claims court was not the proper forum for resolution of the issue, and the matter was placed off calendar. On the evening of March 26, Dr. Huang attended a meeting of the hospital's medical executive committee at which he was allowed to give his version of the events about which Taylor had complained to the chief of staff and the hospital president.

On March 27, 1987, the medical executive committee summarily suspended Dr. Huang's medical staff membership and clinical privileges at the hospital for six months at the conclusion of which he was required to provide evidence of having completed a behavior modification program approved by the medical executive committee, followed by two years' probation. Written notification of the medical executive committee's action, sent to Dr. Huang, stated that the suspension was imposed "as a result of

the recurrence of your disruptive behavior for which you have previously been counselled and for the reason that your continued disruptive behavior severely impacts hospital operations and staff charged with the responsibility of insuring quality patient care delivery."

Pursuant to the hospital's medical staff bylaws Dr. Huang requested a hearing on his summary suspension before a judicial review committee. In response to the request a judicial review committee of five physicians was appointed and Dr. Huang was given written notice of the charges against him, namely: (1) In July 1985 an ad hoc committee at the hospital found that Dr. Huang had exhibited inappropriate behavior toward the nursing staff and improperly examined patients in public rooms; the committee concluded that a 30-day suspension was warranted but instead placed Dr. Huang on probation; however, as indicated below, his conduct condemned in 1985 has continued. (2) On February 23, 1987, despite warnings not to do so, Dr. Huang examined a patient in the lobby of the hospital instead of in a treatment room or private area. (3) Beginning on or about February 23, 1987, and continuing until his suspension, Dr. Huang repeatedly verbally abused and threatened Nurse Taylor, who reported his improper examination of a patient to the chief of staff. (4) Dr. Huang's actions indicate behavioral and attitudinal problems which commenced prior to 1985 and reappeared in 1987; these problems require that he satisfactorily complete a behavior modification program before resuming practice at the hospital. The notice of charges concluded by stating that Dr. Huang's actions "demonstrate a substantial and imminent likelihood of significant impairment to the life, health and safety of patients in this facility, prospective patients and other persons . . . ."

At the hearing before the judicial review committee Nurse Taylor testified: On February 23, 1987, she saw a patient seated in a chair off the front lobby of the hospital; one of the legs of the patient's pants was rolled up over her knee and Dr. Huang was "bent over that knee." The same day Nurse Taylor wrote a memorandum to the chief of staff describing what she had seen. About a week later Dr. Huang telephoned Nurse Taylor at work. He was very angry, called her a troublemaker, and insisted that she retract the statements she made in the memorandum. He told her that if she did not, "something was going to happen to" her. The day after the telephone call, Dr. Huang threw open the door of Nurse Taylor's office, entered, and "started yelling." He told Nurse Taylor she had caused a lot of trouble and, pointing his finger in her face, added: "Something's going to happen to you"; he then walked out of the office and slammed the door. Nurse Taylor wrote a memorandum to the chief of staff and the hospital's president describing both the telephone call from Dr. Huang and his visit to her office. On two occasions after he came to Nurse Taylor's office Dr. Huang

stood in the medical records department outside her office and looked at her; he did not say anything but "would just stand there and just look." Under questioning by Dr. Huang's counsel, Nurse Taylor admitted that when Dr. Huang told her something was going to happen to her he could have meant that he was going to file the small claims action against her. She further admitted that she was not injured in any way by Dr. Huang and that to her knowledge he never had attacked anyone at the hospital or damaged anyone's property.

Dr. Huang testified: He did not make the statements attributed to him in the 1985 ad hoc committee report, including the statement that he agreed he had problems in his relations with the nursing staff. He did not examine a patient in the lobby of the hospital on February 23, 1987; he merely sat and listened to the patient's complaint. After he learned Nurse Taylor had accused him of examining a patient in the lobby he telephoned her. He tried to convince her that he did not examine a patient in the lobby and requested that she withdraw her complaint that he did; she refused. During the telephone conversation Dr. Huang did not tell Nurse Taylor that something would happen to her; he said he would do his best to have her complaint removed from his file, including taking legal action. Near the end of the call Dr. Huang assured Nurse Taylor that he was not angry at her and apologized for his tone of voice. Dr. Huang went to Nurse Taylor's office because he was curious to know who she was and wanted to try again to convince her to withdraw her complaint against him. He found the door of the office ajar. When he knocked on the door it opened and he entered. Nurse Taylor was very angry and accused him of entering her office without knocking. She asked him to leave and he left; he did not slam the door on his way out. Dr. Huang denied threatening Nurse Taylor or trying to scare her either during the telephone conversation or in her office.

The judicial review committee rendered a written decision in which it found: Charge No. 1 (regarding the 1985 report of the ad hoc committee) is true; however, the facts reflected in the report do not support the decision of the medical executive committee to summarily suspend Dr. Huang because those facts do not demonstrate a substantial and imminent likelihood of significant impairment to the life, health and safety of patients, prospective patients or other persons in the hospital. Dr. Huang did not examine a patient in the lobby of the hospital on February 23, 1987, and did not thereafter verbally abuse and threaten Nurse Taylor. Dr. Huang's actions do not indicate behavioral and attitudinal problems which require correction. Based on these findings the judicial review committee concluded that the medical executive committee did not demonstrate by a preponderance of the evidence that its summary suspension of Dr. Huang's medical staff privileges was reasonable.

The medical executive committee appealed the decision of the judicial review committee on the ground it was not supported by substantial evidence.[1] The appeal was heard by a quorum of the hospital's board of directors (appeal board). The appeal board made the following determinations: Dr. Huang made the statements attributed to him in the 1985 ad hoc committee report and his denial that he made those statements raises a question of his credibility. Substantial evidence supports the finding of the judicial review committee that Dr. Huang did not examine a patient in the hospital lobby. However, there is no substantial evidence to support the finding that Dr. Huang did not verbally abuse and threaten Nurse Taylor. The medical executive committee had a sufficient basis for summarily suspending Dr. Huang's medical staff privileges because of his repeated attempts to intimidate and threaten Nurse Taylor. Given Dr. Huang's questionable credibility it is inappropriate to place him back on the staff until he has completed a behavior modification course recommended by the medical executive committee.

Based on its determinations the appeal board overruled the action of the judicial review committee and affirmed the action of the medical executive committee.

*Superior Court Proceedings*

Dr. Huang filed a petition for writ of mandate directing the hospital to set aside the decision of the appeal board. The petition alleged: The hospital acted unlawfully in suspending petitioner without first giving him a hearing and an opportunity to defend himself; in any event, summary suspension was improper based upon the charges lodged against petitioner; the appeal board improperly substituted its own findings of fact for those of the judicial review committee. The hospital answered denying the allegations.

After a hearing the trial court issued a statement of decision wherein it determined that the summary suspension of petitioner was proper both procedurally and substantively. The court did not address petitioner's claim that the appeal board was without authority to make its own findings of fact. Instead, the court found there was substantial evidence to support the decision of the appeal board.[2]

---

[1] The bylaws specify two grounds for appeal: (1) Substantial noncompliance with the procedures prescribed by the bylaws or applicable law which has created demonstrable prejudice to the appealing party; and (2) lack of substantial evidence in the hearing record to support the decision. While the medical executive committee purported to appeal on both grounds, the appeal board concluded that the committee waived the first ground by failing to argue it either in writing or orally.

[2] We summarize only those allegations of the petition and that portion of the court's statement of decision which are relevant to petitioner's contentions on appeal.

Judgment was entered denying the petition for writ of mandate. Petitioner appeals from the judgment.

DISCUSSION

I

Petitioner contends the appeal board was without authority to reject the findings of the judicial review committee based on the board's reweighing of the evidence and evaluation of the credibility of witnesses.

■ "[T]he law requires the hospital to exercise its discretion in conformity with procedural requirements of the staff bylaws and common law fair procedures." (*Hackethal* v. *Loma Linda Community Hospital Corp.* (1979) 91 Cal.App.3d 59, 67 [153 Cal.Rptr. 783].) The hospital's medical staff bylaws provide for appellate review of a decision of the judicial review committee. The bylaws describe the appellate review procedure in pertinent part as follows: "*The proceeding by the Appeal Board shall be in the nature of an appellate review based upon the record of the hearing before the Judicial Review Committee.* The Appeal Board may accept additional oral or written evidence only upon a showing that such evidence could have materially affected the decision of the Judicial Review Committee in the exercise of reasonable diligence. . . ." (Italics added.)

The medical executive committee appealed the decision of the judicial review committee on the ground the decision was unsupported by substantial evidence in the hearing record. No new evidence was presented at the hearing before the appeal board. The board rendered its decision based on the evidence before the judicial review committee and written and oral arguments by the medical executive committee and petitioner.

■ In reviewing the decision of a private hospital board, both the trial court and the appellate court review the administrative record to determine whether its findings are supported by substantial evidence in light of the entire record. (Code Civ. Proc., § 1094.5, subd. (d); *Bonner* v. *Sisters of Providence Corp.* (1987) 194 Cal.App.3d 437, 444 [239 Cal.Rptr. 530].) ■ Under the hospital's bylaws the appeal board is bound by the same standard of review.

■ "The substantial evidence rule provides that where a finding of fact is attacked on the ground it is not sustained by the evidence, the power of an appellate court begins and ends with a determination whether there is any substantial evidence, contradicted or uncontradicted, which supports the finding." (*Kimble* v. *Board of Education* (1987) 192 Cal.App.3d 1423,

1427 [238 Cal.Rptr. 160].) The court must consider the evidence in the light most favorable to the prevailing party, giving him the benefit of every reasonable inference and resolving conflicts in support of the judgment. (*Orange County Employees Assn.* v. *County of Orange* (1988) 205 Cal.App.3d 1289, 1293 [253 Cal.Rptr. 584].) The court is without power to judge the effect or value of the evidence, weigh the evidence, consider the credibility of witnesses, or resolve conflicts in the evidence or in the reasonable inferences that may be drawn from it. (*Adamson* v. *Department of Social Services* (1988) 207 Cal.App.3d 14, 20 [254 Cal.Rptr. 667].) Unless a finding, viewed in light of the entire record, is so lacking in evidentiary support as to render it unreasonable, it may not be set aside. (*Northern Inyo Hosp.* v. *Fair Emp. Practice Com.* (1974) 38 Cal.App.3d 14, 24 [112 Cal.Rptr. 872].)

■ While the appeal board's decision states that substantial evidence did not support judicial review committee finding No. 3 that on and after February 23, 1987, petitioner did not verbally abuse and threaten Nurse Taylor, it is clear from the decision that the appeal board did not apply the substantial evidence rule but instead impermissibly reweighed the evidence and rejected petitioner's testimony on the ground he was not credible. Thus, the decision states: "We believe it is clear that Dr. Huang inappropriately attempted to intimidate and threaten the nurse as was, in part, conceded by his counsel during oral argument. Moreover, we are cognizant of Dr. Huang's repeated denials of statements made to the investigating committee in 1985 and believe this severely calls into question his credibility when balanced against the credibility of the witnesses presented by the Medical Staff. We also believe that while Dr. Huang had a motive to not tell the truth we find that the nurse who was the subject of the threats had no such motive and therefore do not find Dr. Huang's denials to be credible. Consequently, we have determined that finding no. 3 of the Judicial Review Committee is not supported by substantial evidence and that the MEC proved the charge by a preponderance of the evidence at the hearing."

The appeal board's attempt to set aside the judicial review committee's finding that petitioner did not verbally abuse and threaten Nurse Taylor fails because the board's action was not based on a lack of substantial evidence, but on impermissible application of its independent judgment in reviewing the record. (See *Barrie* v. *California Coastal Com.* (1987) 196 Cal.App.3d 8, 14 [241 Cal.Rptr. 477] [under independent judgment test trial court examines administrative record to see if in its view weight of the evidence supports agency's decision].) Accordingly, likewise invalid is the appeal board's further determination that petitioner's repeated attempts to intimidate and threaten Nurse Taylor furnished a substantial basis for the

summary suspension of petitioner's staff privileges by the medical executive committee.

The trial court's finding that substantial evidence supports the decision of the appeal board is meaningless. Under the hospital's bylaws the appeal board was required to conduct proceedings "in the nature of an appellate review," which meant that it was required to apply the substantial evidence test in reviewing the findings of the judicial review committee. Inasmuch as the appeal board did not comply with that requirement, its decision overruling the action of the judicial review committee and affirming the action of the medical executive committee cannot stand.

## II

The trial court found that while the bylaws contain no such requirement, petitioner was given notice and an opportunity to make a statement to the medical executive committee before his medical staff privileges were suspended. The court further found the evidence established that petitioner threatened Nurse Taylor after he learned she had sent a memorandum to the chief of staff complaining of his conduct, and the medical executive committee therefore had reason to conclude that summary suspension was necessary to " 'reduce a substantial and imminent likelihood of significant impairment of the life, health and *safety*' of employees of the hospital." (Original italics.) Petitioner attacks these findings.

■ " '[A] private hospital may not deprive a physician of staff privileges without granting him minimal due process of law protection.' [Citations.] However, '[t]he common law requirement of a fair procedure does not compel formal proceedings with all the embellishments of a court trial . . . nor adherence to a single mode of process. It may be satisfied by any one of a variety of procedures which afford a fair opportunity for an [affected party] to present his position.' [Citation.]" (*Cipriotti* v. *Board of Directors* (1983) 147 Cal.App.3d 144, 155-156 [196 Cal.Rptr. 367].) ■ The record shows, as the trial court found, that before petitioner was suspended he was allowed to present to the medical executive committee his version of the circumstances underlying Nurse Taylor's charges. Petitioner thus was afforded a pre-suspension hearing which met the standards of fair procedure. (See *Tiholiz* v. *Northridge Hospital Foundation* (1984) 151 Cal.App.3d 1197, 1203 [199 Cal.Rptr. 338].)

The bylaws provide that a practitioner's medical staff privileges may be summarily suspended when the practitioner's conduct "appears to require that immediate action be taken to protect the life or well-being of a patient(s) or to reduce a substantial and imminent likelihood of significant

impairment of the life, health [or] safety of any patient, prospective patient, or other person." The judicial review committee found that petitioner did not threaten and verbally abuse Nurse Taylor on and after February 23, 1987. As previously explained herein, the appeal board's decision rejecting that finding is invalid because the board's action was not based on the substantial evidence standard but on the board's independent assessment of the evidence. The judicial review committee finding, which remains dispositive, removes any valid basis for the medical executive committee's summary suspension of petitioner.

## DISPOSITION

The judgment is reversed. Costs on appeal are awarded to petitioner.

Johnson, J., and Woods (Fred), J., concurred.

Respondents' petition for review by the Supreme Court was denied July 10, 1990.