Filed 3/30/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| M.S.,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>A.S.,<br><br>    Defendant and Appellant. | A161921<br><br>(Mendocino County Super. Ct.<br> No. SCTMCVDV202073987) |

The trial court granted respondent M.S. a three-year domestic violence restraining order (DVRO) against appellant A.S. that included the parties' three children as protected parties. A.S. does not challenge the propriety of the DVRO as it pertains to M.S., but contends the trial court abused its discretion by including the children in the DVRO. We conclude otherwise and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

The parties are married and have three sons born between 2005 and 2013. Shortly after the parties separated, M.S. sought a DVRO against A.S. for herself and her sons. She alleged in her DVRO petition that A.S. enlisted her friends and mother to talk her into reconciling with A.S., that he threatened to kill M.S.'s male friend and followed him to his home, and that he engaged their children to spy on her. As part of her DVRO petition, M.S. requested a child custody or visitation order. The trial court issued a temporary restraining order and set the matter for a hearing.

1

A.S. filed a response in which he denied harming his children or physically harming M.S.  He also argued that M.S.'s allegations that he talked to the children about her were insufficient to justify inclusion of the children in a DVRO.

The trial court held a hearing on M.S.'s DVRO petition several months later.  The evidence of domestic violence against M.S. included multiple instances of A.S.'s stalking and harassment of her.  The following summarizes the evidence as it pertains to the children.

M.S. first testified about A.S.'s treatment of the children.  According to M.S., A.S. often slapped the children "upside the head," pushed them down, and choked them "in the name of playing."  In her words, "[m]ost people would not say it's the way you play with children. . . .  Very rough indeed, making them cry. . . .  [¶] Playing exceptionally rough, even when asked to stop.  Lots of slapping, pushing down, choking."  On one occasion, A.S. "choked out" one of their sons in public.  A.S. also screamed at the children, called them derogatory names, and encouraged them to engage in physical violence with each other for entertainment.  The court sustained A.S.'s hearsay objections to much of the rest of M.S.'s direct testimony and her documentary evidence.

The parties' eldest son testified that A.S. frequently insulted and belittled him and his brothers and screamed at them for little things.  The eldest son was afraid of A.S. but he was more afraid of being punished than of being hurt.  He also testified he feared for his safety after M.S. left A.S., though he was more afraid of the unpredictability of the situation than he was of A.S.  He did not provide testimony that A.S. was physical with him.

The eldest son also described A.S.'s efforts to enlist him and his brothers to spy on M.S.  There were "countless" times A.S. asked the son to

gather information about M.S., and A.S. offered him and his brothers money to follow M.S. On at least one occasion, A.S. had the son help him look for the house of the man M.S. was seeing. A.S. also told the son that he would physically harm the man and that he drove to the man's house and looked at him through a scope-mounted rifle.

The final witness to testify at the hearing was M.S.'s mother. She said she witnessed the children fighting back tears on several occasions after A.S. slapped them on the head while supposedly "playing." Moreover, during family activities, A.S. often started yelling and the children would freeze in fear. She also testified about an incident that occurred when she and the family went to Disneyland. One of the sons was playing when A.S. grabbed the boy by the back of the neck, pulled the boy to him, and made him walk like that back to the hotel.

After hearing this testimony, the court granted the DVRO specifying M.S. and her children as protected parties. The court acknowledged M.S. did not present as much evidence as expected but found that the evidence she did present fell within the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.[1]). Specifically, the court concluded A.S. had engaged in a campaign of harassment against M.S. shortly after the parties separated by enlisting the children to stalk her and gather information on her.

The court also found that A.S. occasionally engaged in acts of physical violence towards the children. The court stated, in part: "While the testimony established that this was most commonly occurring in the context of overly rough play, the children did not experience this conduct by their father as play, as evidenced by the maternal grandmother's testimonythat the children would tear up, that their faces would freeze in humiliation, and

---

[1] All further statutory references are to the Family Code.

3

that they would feel afraid afterwards. [¶] That they experienced fear of the potential of physical discipline of their father." The court also granted M.S. temporary physical and legal custody of the children with supervised visitation for A.S.

## DISCUSSION

The purpose of the DVPA is "to prevent acts of domestic violence, abuse . . . and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (§ 6220.) To that end, the DVPA provides for the issuance of restraining orders that enjoin "abuse." Sections 6203 and 6320 define "abuse" to include stalking, harassment, striking, and battering. (§§ 6203, subd. (a)(4), 6320, subd. (a).) A trial court has broad discretion under the DVPA to determine whether to grant a petition for a restraining order. (*In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 702.)

We review an order granting or denying a DVRO for abuse of discretion. (*Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1143.) In reviewing the trial court's factual findings, we apply the substantial evidence rule. (*Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 822–823.) The inquiry is whether substantial evidence supports the court's finding, not whether a contrary finding might have been made. (*In re Alexandria P.* (2016) 1 Cal.App.5th 331, 355.) We accept as true all evidence tending to establish the correctness of the trial court's findings and resolve every conflict in favor of the judgment. (*Burquet*, at p. 1143.)

A.S. contends the trial court abused its discretion because there is insufficient evidence of good cause for including the children in the DVRO. We disagree.

4

In her DVRO petition, M.S. listed the children as "family or household members" for which she also sought protection. Pursuant to section 6340, subdivision (a), "after notice and a hearing, a court retains the same discretion it has under section 6320 to issue a restraining order in favor of a party, and to include family or household members as protected parties on a showing of good cause." (*J.H. v. G.H.* (2021) 63 Cal.App.5th 633, 643.) By its plain language, section 6320, subdivision (a), requires only a showing of "good cause" for the inclusion of family members or household members in a DVRO. (§ 6320, subd. (a).) In determining whether there is good cause to include children as protected parties, the court considers the totality of the circumstances and, where custody or visitation orders are sought for the children, whether failure to make the requested order may jeopardize the safety of the children. (*J.H. v. G.H.*, at p. 643.) But a showing or finding of potential jeopardy to the safety or well-being of the children is not a necessary predicate for including them as protected parties; it is but one factor the court must consider in the totality of the circumstances. (*Id.* at p. 642.) In other words, "while a showing of potential jeopardy to the safety of the children might be found sufficient for including them as protected parties, it is not a necessary predicate for doing so." (*Ibid.*)

We conclude there is substantial evidence of good cause supporting the children's inclusion in the DVRO. The couple's eldest son testified that A.S. enlisted him to stalk M.S. and surreptitiously gather information on her and that A.S. also attempted to enlist the other children to follow M.S. A.S. also told the eldest son he would physically harm the man M.S. was seeing and had the eldest son help him look for the house of that man. Based on such evidence, the trial court reasonably concluded that A.S. effectively enlisted his sons in stalking and harassing M.S., conduct which may be properly

5

enjoined under sections 6340 and 6320. Inclusion of the children in the DVRO was therefore appropriate to prevent future attempts by A.S. to use his children to harass, stalk, or otherwise spy on M.S and any man she might choose to see. (§§ 6203, subd. (a)(4), 6320, subd. (a).)

Moreover, substantial evidence supports the trial court's finding of physical violence involving the children. (See § 6320, subd. (a) [party may be enjoined from striking or battering].) The record here includes evidence that A.S. would often slap, push, and choke the children and play "exceptionally" rough, going so far as to "choke out" one of the children. There was testimony that the children would cry or fight back tears during this rough "play" and that they would freeze in fear when they heard A.S. yelling. M.S.'s mother also testified as to one occasion where A.S. grabbed the neck of one of the children. The court reasonably inferred from this evidence that A.S. committed physical violence against the children on multiple occasions, that the children did not experience the physical violence as "play," and that the children feared potential physical abuse from A.S.

A.S. contends the testimony at the hearing merely showed these incidents were "more embarrassing than painful" and simply reflected "rough play" and discipline. However, the trial court drew other, reasonable inferences from the evidence, and we may not substitute our own judgment for that of the trial court. (*Gonzales v. Munoz* (2007) 156 Cal.App.4th 413, 420.) And though A.S. also points out evidence favorable to him, we cannot reweigh the evidence or resolve evidentiary conflicts. (*Huang v. Board of Directors* (1990) 220 Cal.App.3d 1286, 1293–1294.)

Next, A.S. likens this case factually to *J.H. v. G.H.*, *supra*, 63 Cal.App.5th 633. There, the trial court issued a DVRO against J.H. in favor of G.H. but found that the evidence did not support the inclusion of the

parties' children as protected parties because it did not believe J.H. posed any current threat to the children. (63 Cal.App.5th at pp. 643–644.) The trial court also concluded it would be in the best interests of the children for them to begin repairing their relationship with J.H. (*Ibid.*) G.H. appealed, arguing in part that the trial court failed to consider the totality of the circumstances. (*Id.* at p. 644.) This court disagreed, observing the record contained evidence showing that J.H. and his children had been separated for a significant period, that J.H. had since engaged in parenting courses, therapy, and a batterer intervention course, that he was remorseful of his past acts of domestic violence, and that he had changed his alcohol consumption habits. (*Id.* at p. 645.) The record also showed that the San Francisco Human Services Agency had no concerns about the children's safety with J.H and had determined J.H. had done "everything" the agency required of him. (*Ibid.*) Based on the totality of the circumstances appearing in the record, this court concluded the trial court did not abuse its discretion in excluding the children from the DVRO. (*Ibid.*)

In *J.H. v. G.H.*, this court reviewed the record to determine whether the trial court abused its discretion in *excluding* children from the subject DVRO and determined it did not. But here, we must accept as true all evidence tending to establish the correctness of the trial court's findings and resolve every conflict in favor of its decision to *include* the children in the DVRO. (*Burquet v. Brumbaugh, supra*, 223 Cal.App.4th at p. 1143.) As discussed, there is substantial evidence supporting the trial court's inclusion of the children in the DVRO.

In any event, the facts of this case are clearly distinguishable from those in *J.H. v. G.H.* M.S. filed her DVRO petition shortly after the events giving rise to the petition. Though the record shows the parties later

7

stipulated to A.S. attending reunification counseling with the children, the record also indicates that A.S. thereafter failed to engage in any counseling. And while A.S. points to the evidence that the family took a trip to Disney World around the time of the events giving rise to the DVRO, this evidence, by itself, does not negate or otherwise undermine the trial court's determination that A.S.'s conduct warrants inclusion of the children in the DVRO. Indeed, the testimony of M.S.'s mother that A.S. grabbed one of his sons by the back of the neck at Disneyland (though it is unclear whether this is the same trip to which A.S. refers or a different trip) is also part of the totality of circumstances that supported the court's decision.

We conclude the trial court did not abuse its discretion by including the couple's children in the DVRO.[2]

## DISPOSITION

The order is affirmed.

---

[2] On March 10, 2022, A.S. filed a motion for calendar preference and expedited review. The motion is denied as moot.

_____

Fujisaki, Acting P. J.

WE CONCUR:

_____

Petrou, J.

_____

Rodríguez, J.

A161921

<u>M.S. v. A.S.</u>  (A161921)

Trial Court:       Mendocino County

Trial Judge:      Hon. Cindee F. Mayfield

Attorneys:

      Geary, Shea, O'Donnell, Grattan & Mitchell, Leo R. Bartolotta for Defendant and Appellant.

      Don Anderson Law Offices and Don A. Anderson for Plaintiff and Respondent.