[No. D058988. Fourth Dist., Div. One. Oct. 24, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
JOVAN CHRISTIAN JACKSON, Defendant and Appellant.

528

COUNSEL

Joseph D. Elford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael R. Johnsen and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

Bonnie M. Dumanis, District Attorney, Laura Tanney, Craig E. Fisher and Christopher Lindberg, Deputy District Attorneys, as Amicus Curiae on behalf of Plaintiff and Respondent.

OPINION

**BENKE, Acting P. J.**—Defendant and appellant Jovan Christian Jackson was charged with the sale of marijuana and possession of marijuana for sale. Prior to his trial the People filed a motion under Evidence Code section 402 for an order preventing him from offering evidence he was entitled to the defense provided by the Medical Marijuana Program Act (MMPA), Health and Safety Code[1] section 11362.7 et seq., to patients who associate for the purpose of collectively cultivating medical marijuana.

At the hearing on the People's motion, Jackson testified he and approximately five other individuals were actively engaged in cultivating marijuana and providing it to themselves and the approximately 1,600 other members of their medical marijuana collective. Jackson testified each member of the collective was required to show proof marijuana had been prescribed to the member by a medical professional for treatment of a medical condition. Jackson further testified the collective did not generate any profits for either himself or the other active participants. Jackson offered no testimony with respect to how the collective was governed.

The trial court found Jackson presented sufficient evidence the collective's members were qualified patients within the meaning of the MMPA and the collective was not operated on a for-profit basis. However, the trial court found that in light of the large number of members of the collective, Jackson could not establish the collective was operated for the purpose of collectively cultivating marijuana within the meaning of the MMPA as opposed to simply distributing marijuana. Thus, the trial court granted the People's motion and prevented Jackson from offering any defense under the MMPA. Jackson was convicted and the trial court imposed three years of formal probation.

We reverse Jackson's conviction. In opposing the People's motion, Jackson's burden was not very great. Jackson was only required to produce evidence which would create a reasonable doubt as to whether the defense provided by the MMPA had been established. The defense the MMPA provides to patients who participate in collectively or cooperatively cultivating marijuana requires that a defendant show that members of the collective or cooperative: (1) are qualified patients who have been prescribed marijuana for medicinal purposes, (2) collectively associate to cultivate marijuana, and (3) are not engaged in a profit-making enterprise. As we interpret the MMPA, the collective or cooperative association required by the act need not include active participation by all members in the cultivation process but may be

---

[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.

limited to financial support by way of marijuana purchases from the organization. Thus, contrary to the trial court's ruling, the large membership of Jackson's collective, very few of whom participated in the actual cultivation process, did not, as a matter of law, prevent Jackson from presenting an MMPA defense.

However, we also recognize that in determining whether an MMPA defense has been established, a trier of fact must consider whether the organization operates as a for-profit enterprise or is a nonprofit enterprise operated for the benefit of its members. In resolving that question, an organization's large membership and governance processes, if any, are relevant.

As we explain, where, as here, a collective has a large membership, the overwhelming number of whom do not, in any fashion, participate in the operation or governance of the collective and there is evidence of a high volume of purchases by the members, a trier of fact could reasonably conclude that, notwithstanding Jackson's testimony to the contrary, the organization is a profit-making enterprise which distributes marijuana to customers rather than to members of a nonprofit collective organization and is therefore outside the scope of the defense offered by the MMPA. Thus, on remand, the jury should be instructed that in determining whether Jackson is entitled to a defense, the jury must determine whether the collective he participates in is a profit-making enterprise and further that in resolving that question, it should consider, in addition to other evidence of profit or loss, the size of the collective's membership, the volume of purchases from the collective and the members' participation in the operation and governance of the collective.

## FACTUAL AND PROCEDURAL BACKGROUND

Jackson has been prosecuted twice with respect to his operation of a medical marijuana dispensary operating under the name Answerdam Alternative Care (Answerdam). In 2009 Jackson was acquitted of five counts related to the possession and sale of marijuana. At Jackson's first trial, the jury was instructed with respect to the defense for marijuana collectives and cooperatives provided by the MMPA, in pertinent part, as follows: "A person is not guilty of the crimes charged in Counts 1–5 if his actions are exempted under the Medical Marijuana Program. The Medical Marijuana Program provides that qualified patients [and their designated primary caregivers] may associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes.

"A *qualified patient* is someone for whom a physician has previously recommended or approved the use of marijuana for medical purposes. [¶] . . . [¶]

"*Collectively* means involving united action or cooperative effort of all members of a group.

"*Cooperatively* means working together or using joint effort toward a common end.

"*Cultivate* means to foster the growth of a plant.

"If you have reasonable doubt about whether, at the time of the crimes charged in Counts 1–5, the defendant was a qualified patient [or primary caregiver], and that he committed the crimes solely because he was associating within the State of California in order collectively or cooperatively to cultivate marijuana, you must find the defendant not guilty."

Following Jackson's first trial, the jury foreman explained the difficulty the jury faced in determining whether Jackson was entitled to an MMPA defense: "[I]t was all contingent on the medical marijuana defense and the lack of definition within the state law as far as what constitutes a collective or a cooperative . . . . So, um, just for the lack of definition of that state law was really the key. [¶] . . . [¶] Um, the prosecution gave his . . . kind of narrow definition during the, the closing arguments, but there was nothing in the law that really backed that up."

While the initial charges against Jackson were still pending, law enforcement agencies continued to investigate Jackson and Answerdam. Following his acquittal at the first trial, Jackson was charged in a new information with one count of the sale of marijuana (§ 11360, subd. (a)) and two counts of possession of marijuana for sale (§ 11359). Those allegations were based on activity which occurred after the conduct which gave rise to the first trial.

As we indicated at the outset, prior to trial on the second information, the People moved under Evidence Code section 402 for an order preventing Jackson from offering an MMPA defense. At the hearing one of the investigators testified he never observed any cultivation taking place at the Answerdam dispensary. A member of the collective testified that although he purchased marijuana at the dispensary, he never saw it being grown there and he never participated in its cultivation.

For his part Jackson testified at the Evidence Code section 402 hearing that marijuana for Answerdam was grown at another location, that he and four or five other members of the collective took part directly in cultivating the marijuana and that each member of the collective was required to produce a physician's recommendation that he or she use marijuana to treat a diagnosed

illness or condition. According to Jackson, at one time or another approximately 1,676 qualified patients had joined Answerdam by way of paying a membership fee and signing a membership form. Jackson further testified that Answerdam was not a profit-making business and that he and others were paid only for the expenses they incurred in cultivating marijuana and operating the dispensary. Jackson conceded that there were no meetings of the Answerdam membership and no attempts to contact them with respect to operation of the collective.

In considering the People's motion, the trial court found there was not enough information to determine whether Answerdam was operated as a for-profit enterprise and therefore the trial court would not rely on that factor in ruling on the People's motion. In nonetheless granting the motion and excluding evidence of the defense, the trial court stated: "So assuming there was cultivation going on and that at least some members were involved, that still leaves us with the evidence that was presented that there were well over 1,000 people involved in this so-called collective or cooperative, and a very, very small percentage of those—a miniscule percentage was involved in the act of cultivation.

"That certainly does not in any way establish that the association was for the purpose of cultivation. It only establishes that some of the people may have been cultivating. That's very different. Obviously, as I pointed out, all marijuana is cultivated. If everyone who distributed marijuana was a cultivator, then there would be no need for the defense.

"It's clear that, as I said, the statute says that the association has to be for the purpose of cultivating marijuana. There is no evidence in the record that that was the purpose of this association. Indeed, the evidence points to quite the contrary, that the purpose of the association was for the distribution of marijuana that was cultivated by others whether or not members.

"And in my mind, there's no plausible basis on which this defense could go to the jury. It could not possibly raise a reasonable doubt using the language of [section] 11362.775."

In light of the trial court's ruling on the People's motion, at the second trial no evidence with respect to the MMPA defense was offered and no instruction on the issue was given. Jackson was, as we indicated, convicted on all three counts and given three years of formal probation.

## DISCUSSION

### I

We begin our consideration of Jackson's contention the trial court erred in granting the People's motion by noting the modest burden Jackson bore in opposing the People's motion. When the closely related defenses to marijuana possession offenses offered by the Compassionate Use Act of 1996 (CUA) (§ 11362.5 et seq.) are at issue, the cases have uniformly held that the defendant need only raise a reasonable doubt as to whether the elements of the defense have been established. (See, e.g., *People v. Jones* (2003) 112 Cal.App.4th 341, 350 [4 Cal.Rptr.3d 916]; see also *People v. Mower* (2002) 28 Cal.4th 457, 476–482 [122 Cal.Rptr.2d 326, 49 P.3d 1067].) The defendant's limited burden is based on the conclusion that CUA defenses turn on the nature of the defendant's conduct rather than a collateral matter, such as when an entrapment defense is offered. (*People v. Mower, supra,* 28 Cal.4th at pp. 476–482.) Because the defenses provided by the MMPA, like those set forth in the CUA, relate directly to the nature of the defendant's conduct as opposed to collateral matters, those defenses only require that a defendant raise a reasonable doubt as to whether the elements of the defenses have been proven. In determining whether that minimal burden has been met, "the trial court must leave issues of witness credibility to the jury." (*People v. Villanueva* (2008) 169 Cal.App.4th 41, 49 [86 Cal.Rptr.3d 534].)

### II

The court in *People v. Colvin* (2012) 203 Cal.App.4th 1029 [137 Cal.Rptr.3d 856] (*Colvin*) recently discussed the defenses offered by the MMPA at some length in a context very similar to the circumstances set forth in the record here. As the court in *Colvin* recognized, the defenses provided by the MMPA grow out of adoption by the people of Proposition 215: "In 1996, voters passed Proposition 215, the Compassionate Use Act of 1996 (CUA; § 11362.5). One purpose of the CUA was to 'ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment' of illnesses for which marijuana provides relief. [Citations.] A second purpose was to ensure that patients and their primary caregivers who obtain and use medical marijuana are not subject to criminal prosecution or sanction. [Citation.] The CUA therefore provided that section 11357, relating to the possession of marijuana, and section 11358, relating to the cultivation of marijuana, 'shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient' upon a doctor's

recommendation. [Citation.] The CUA thus provided a limited immunity from prosecution, including a defense at trial. [Citation.]

"In response to the CUA's encouragement 'to *implement a plan to provide for the safe and affordable distribution of marijuana to all patients*' in need of it [citation], our Legislature enacted the MMPA (§ 11362.7 et seq.). Through the MMPA, the Legislature sought to '(1) [c]larify the scope of the application of the act and facilitate the prompt identification of qualified patients and their designated primary caregivers in order to avoid unnecessary arrest and prosecution of these individuals and provide needed guidance to law enforcement officers. [¶] (2) Promote uniform and consistent application of the act among the counties within the state. [¶] (3) Enhance the access of patients and caregivers to medical marijuana through collective, cooperative cultivation projects.' [Citation.] To these ends, section 11362.775 of the MMPA provides, 'Qualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with identification cards, *who associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes*, shall not solely on the basis of that fact be subject to state criminal sanctions under Section 11357, 11358, 11359, 11360, 11366, 11366.5, or 11570.' [Citation.]" (*Colvin, supra*, 203 Cal.App.4th at pp. 1034–1035.)

In *Colvin* the defendant was the operator of two marijuana dispensaries which together had 5,000 members. Based on his transportation of marijuana from one dispensary to the other, the defendant was charged with the sale or transportation of marijuana as well as with the possession of concentrated cannabis.

The defendant in *Colvin* waived a jury trial and at the close of the prosecution case moved for acquittal, asserting the defense provided by section 11362.775. The trial court found the defendant was a bona fide patient and that the dispensaries he operated were legitimate and complied with the MMPA. Nonetheless, the trial court found transportation from one dispensary to another had nothing to do with cultivation and thus the trial court concluded a section 11362.775 defense was not available. The trial court then found the defendant guilty of both marijuana offenses. The Court of Appeal reversed and found that the defense applied.

In rejecting the trial court's reasoning, the court in *Colvin* stated: "It is unclear what the trial court meant when it said that Colvin's transportation of marijuana was unrelated to the cultivation process and was outside what section 11362.775 allows. There was no evidence that Colvin's transportation of one pound of marijuana was for anything other than [his Holistic dispensaries]. To the extent the trial court ruled as it did because it believed that

only cooperative or collective *cultivators* of marijuana can transport the product, Colvin/Holistic is a cultivator: Holistic has three onsite 'grow rooms,' which the LAPD visited. Fourteen members of Holistic also grow marijuana for Holistic offsite. All of the marijuana Holistic distributes is from a cooperative member; none of it is acquired from an outside source. Thus, even under a reading of section 11362.775 limiting transportation of marijuana only to cooperatives that cultivate it, then Colvin was entitled to the immunity." (*Colvin, supra*, 203 Cal.App.4th at p. 1037.)

As an alternative to the trial court's reasoning, the Attorney General argued, as she does here, "that section 11362.775 does not condone 'a large-scale, wholesale-retail marijuana network' like Holistic, which has approximately 5,000 members. The Attorney General argues that a collective or cooperative cultivation 'must entail some united action or participation among all those involved, as distinct from merely a supplier-consumer relationship.' There must be, the Attorney General suggests, 'some modicum of collaboration' in which qualified patients and caregivers ' "come together" ' in 'some way.' " (*Colvin, supra*, 203 Cal.App.4th at p. 1037.)

The court in *Colvin* squarely rejected the Attorney General's argument: "The evidence here was Holistic obtained its business licenses, was a nonprofit corporation, and was in the process of complying with then applicable ordinances. The trial court thus found that Holistic was a 'legitimate' dispensary, which implies that the court believed Holistic was complying with the appropriate laws.

"The Attorney General does not argue otherwise, instead maintaining that a medical marijuana cooperative seeking the protections of section 11362.775 must establish that some number of its members participate in the process in some way. The Attorney General does not specify *how* many members must participate or in *what* way or ways they must do so, except to imply that Holistic, with its 5,000 members and 14 growers, is simply too big to allow any 'meaningful' participation in the cooperative process; hence, it cannot be a 'cooperative' or a 'collective' in the way section 11362.775 intended. But this interpretation of section 11362.775 would impose on medical marijuana cooperatives requirements not imposed on other cooperatives. A grocery cooperative, for example, may have members who grow and sell the food and run a store out of which the cooperative's products are sold. But not everyone who pays a fee to become a member participates in the cooperative other than to shop at it." (*Colvin, supra*, 203 Cal.App.4th at pp. 1038–1039.)

In finding the defendant had established the defense, the court in *Colvin* also noted that in important respects the defendant and his dispensary had

complied with guidelines[2] promulgated by the Attorney General: "Holistic, for example, is a nonprofit registered with the City of Los Angeles in 2007, and Colvin took steps to comply with applicable ordinances (*Guidelines, supra,* § IV.A. 1, 2, B.1, 2, pp. 8, 9 [advising cooperatives to incorporate under the Corp. Code or Food & Agr. Code and to obtain applicable business licenses and permits]); Holistic requires members to fill out membership forms, assigns each member a number to track prescription expiration, and keeps a record of members' medical problems and each time a member returns (*id.,* § IV.B.3, p. 9 [potential members should complete a written membership application, their status should be verified, membership records should be maintained, and expiration of prescriptions should be tracked]); all money Holistic receives from members goes back into the cooperative (*id.,* § IV.B.5, p. 10 ['[a]ny monetary reimbursement that members provide to the collective or cooperative should only be an amount necessary to cover overhead costs and operating expenses']); Holistic bases membership fees on the cost to cover the member's needs (*id.,* § IV.B.6, p. 10 [marijuana may be allocated based on fees that are reasonably calculated to cover overhead costs and operating expenses]); Colvin was transporting only one pound of marijuana (*id.,* § IV.B.7, p. 10 ['collectives and cooperatives may cultivate and transport marijuana in aggregate amounts tied to its membership numbers']); and Holistic employs security measures, namely, it keeps new applicants in a 'primary holding' area and verifies their information before admitting them and has no more than two to three pounds of marijuana on the premises at any given time (*id.,* § IV.B.8, p. 11 [collectives and cooperatives should take security measures to protect patients and surrounding neighborhoods]). Thus, to the extent these guidelines have any weight, they contemplate cooperatives like Holistic." (*Colvin, supra,* 203 Cal.App.4th at pp. 1040–1041.)

■ The court in *Colvin* also relied on the holding in *People v. Urziceanu* (2005) 132 Cal.App.4th 747, 785 [33 Cal.Rptr.3d 859] (*Urziceanu*). In *Urziceanu* the court found that a defendant was entitled to an instruction on the MMPA defense notwithstanding the fact that his marijuana collective had several hundred members. In doing so the court stated section 11362.775 represents "a dramatic change in the prohibitions on the use, distribution, and cultivation of marijuana for persons who are qualified patients or primary caregivers . . . . Its specific itemization of the marijuana sales law indicates it contemplates the formation and operation of medicinal marijuana cooperatives that would receive reimbursement for marijuana and the services

---

[2] California Attorney General's Guidelines for the Security and Non-diversion of Marijuana Grown for Medical Use (Aug. 2008) <http://ag.ca.gov/cms_attachments/press/pdfs/n1601_medicalmarijuanaguidelines.pdf> [as of Oct. 24, 2012] (Guidelines). The Guidelines are entitled to considerable weight but do not bind us. (*People v. Hochanadel* (2009) 176 Cal.App.4th 997, 1011 [98 Cal.Rptr.3d 347] (*Hochanadel*).)

provided in conjunction with the provision of that marijuana." (*Urziceanu, supra*, 132 Cal.App.4th at p. 785.)

The Attorney General asks that we reject the relatively broad interpretation of the MMPA adopted by the courts in *Colvin* and *Urziceanu*. However, as was the case in *Colvin*, the Attorney General is unable to point to any portion of the MMPA itself which suggests the Legislature intended to put any numerical limits on the size of a collective or cooperative. As the court in *Colvin* recognized, there is nothing in the MMPA which suggests where such a numerical limit should be placed and in any event a numerical limit would be somewhat at odds with one of the express purposes of the MMPA, to wit: enhancing access to medical marijuana. (Stats. 2003, ch. 875, § 1(b), pp. 6422–6423.)

The only authority the Attorney General offers, *People ex rel. Trutanich v. Joseph* (2012) 204 Cal.App.4th 1512, 1523 [140 Cal.Rptr.3d 9], does not consider the express terms of the MMPA, but simply makes the conclusory statement that section 11362.775 "does not cover dispensing or selling marijuana." That statement is of course inconsistent with the Attorney General's own guidelines, which appear to contemplate that collectives and cooperatives will dispense marijuana and that there will be an exchange of cash consideration. (See Guidelines, *supra*, § IV.B.5, p. 10.) It is also inconsistent with the Legislature's recent addition of section 11362.768 to the MMPA. Section 11362.768 provides that "a medical marijuana cooperative, collective, *dispensary*, operator, establishment, or provider that is authorized by law to possess, cultivate, or distribute medical marijuana and that has a storefront or mobile retail outlet which ordinarily requires a local business license" may not be located within a 600-foot radius of a school. (§ 11362.768, subd. (e), italics added.) In enacting this limitation, the Legislature seemed to express its understanding that contrary to the court's statement in *People ex rel. Trutanich v. Joseph*, the MMPA permits retail dispensaries.

The Attorney General's Guidelines and the adoption of section 11362.768 also foreclose adoption of the even narrower interpretation offered by the district attorney in her amicus curiae brief. The district attorney argues that all members of a collective or cooperative must actively participate in cultivation of marijuana to bring the organization within the terms of section 11362.76. Such a strict limitation on the means by which authorized collectives and cooperatives provide medical marijuana to their members is entirely inconsistent with the conduct permitted under the Attorney General's Guidelines and expressly contemplated in the Legislature's most recent amendments to the MMPA.

## III

■ Given the limited burden placed on Jackson at the Evidence Code section 402 hearing and the holding in *Colvin*, with which we agree, we must conclude the trial court erred in granting the People's motion. In this regard we place particular emphasis on the trial court's express unwillingness to determine whether Answerdam was operated for profit. Assuming then, as did the trial court, that Answerdam was not operated for profit, and accepting Jackson's testimony that all members were qualified medical marijuana patients, the fact Answerdam has a large membership did not prevent Jackson from offering a defense under section 11362.775. Jackson presented enough evidence to raise a reasonable doubt as to whether Answerdam was a collective or cooperative project within the meaning of section 11362.775.

In light of Jackson's acquittal in the first trial, at which an MMPA defense instruction was given, there can be no serious dispute that the failure to permit him to offer such a defense at the second trial was prejudicial and that we must therefore reverse Jackson's conviction.

## IV

Because an MMPA defense will no doubt arise in any further proceedings in this case, as well as others, and because the parameters of the MMPA defense have not been set forth in a definitive manner, we are obliged to consider the limits of the defense and provide the trial court and the parties principles which will govern jury instructions on remand.

■ While we agree with the holding in *Colvin* that the relatively large size of a collective or cooperative will not per se take it outside the scope of section 11362.775, in any given case the size of an enterprise may nonetheless be quite relevant in determining whether a defendant's participation is protected by the MMPA. In this regard we note that although section 11362.775 itself does not require that collective or cooperative projects be nonprofit enterprises, there is little doubt the Legislature did *not* intend to authorize profit-making enterprises. The clearest expression of that limitation is set forth in the basic immunity provided to individual patients and their care providers by the closely related provisions of section 11362.765, subdivision (a): "However, nothing in this section shall authorize the individual to smoke or otherwise consume marijuana unless otherwise authorized by this article, nor shall anything in this section authorize any individual *or group to cultivate* or distribute marijuana for profit." (Italics added.) The nonprofit limitation on group cultivation in section 11362.765, subdivision (a) would make little, if any, sense, if it did not also apply to collective or cooperative projects permitted under section 11362.775. (See *Bode v. Los Angeles*

*Metropolitan Medical Center* (2009) 174 Cal.App.4th 1224, 1237 [94 Cal.Rptr.3d 890] ["[P]rovisions relating to the same subject matter or that are part of the same statutory scheme must be read together and harmonized to the extent possible."]; see also *Qualified Patients Assn. v. City of Anaheim* (2010) 187 Cal.App.4th 734, 747 [115 Cal.Rptr.3d 89] [collective and cooperatives under § 11362.775 must be nonprofit]; *Hochanadel, supra,* 176 Cal.App.4th at p. 1018 [same]; Guidelines, *supra,* at p. 9 [same].) Thus, when a defense under the MMPA is offered, the People are entitled to an instruction advising the jury that a collective or cooperative protected by the MMPA must be a nonprofit enterprise.

■ Plainly, in determining whether a collective or cooperative is a nonprofit enterprise, its establishment as such under Corporations Code section 12201[3] and any financial records of the enterprise will be relevant, including in particular any processes or procedures by which the enterprise makes itself accountable to its membership. An operator's testimony as to the nonprofit nature of the enterprise is of course also relevant.

However, by the same token, the absence of fairly complete financial records and any accountability to members will also be relevant, especially when combined with a large number of members and evidence of a high volume of business. In the latter circumstance a trier of fact could reasonably conclude that, notwithstanding an operator's testimony, a large membership, high volume enterprise was in fact operated for profit. Thus, in addition to an instruction that an enterprise must be nonprofit, the People are entitled to an instruction that in considering whether a collective or cooperative is non-profit, a jury may consider the testimony of the operators of the enterprise, its formal establishment as a nonprofit organization, the presence or absence of any financial records, the presence or absence of processes by which the enterprise is accountable to its members, the size of the enterprise's member-ship and the volume of business it conducts.

Of course the jury should also be instructed that a defendant is only required to raise a reasonable doubt as to whether the elements of the defense, including the nonprofit element, have been proven. (See *People v. Jones, supra,* 112 Cal.App.4th at p. 350.)[4]

---

[3] Corporations Code section 12201 permits establishment of consumer cooperatives which are "democratically controlled and are not organized to make a profit for themselves, as such, or for their members, as such, but primarily for their members as patrons (Section 12243)."

[4] We deny Jackson's request for judicial notice of a recent letter the Attorney General sent to the Legislature. The letter was not presented in the trial court. (See *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2 [112 Cal.Rptr.3d 853, 235 P.3d 152].)

## DISPOSITION

The judgment of conviction is reversed and remanded for further proceedings consistent with the views we have expressed.

McDonald, J., and McIntyre, J., concurred.

A petition for a rehearing was denied November 20, 2012, and the opinion was modified to read as printed above.