Filed 10/16/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>THOMAS ANTHONY SANDERCOCK,<br>JR., et al.,<br><br>  Defendants and Respondents. | 2d Crim. No. B238858<br>(Super. Ct. No. F455771)<br>(San Luis Obispo County) |

Defendants Thomas Anthony Sandercock, Jr., Christopher Austin and Amy Austin were charged with selling marijuana and possession of marijuana for sale. (Health & Saf. Code, §§ 11359 & 11360).[1] In a pretrial motion, the trial court approved a defense instruction that would allow the retail sale of marijuana. The People declared they could not proceed under the instruction. No wonder. Neither the Compassionate Use Act (CUA) nor the Medical Marijuana Program Act (MMPA) allows for the sale of marijuana for profit. (§§ 11362.7 et seq. & 11362.5) The People sought to exclude any defense under the CUA and the MMPA. The trial court entered judgments of dismissal and the People appeal.

---

[1] All statutory references are to the Health and Safety Code unless stated otherwise.

We reverse.  The MMPA is not a defense to retail sales.  Any money received must be no more than a cooperative or collective member's proportionate share of the actual cost of cultivating and distributing the marijuana.

## *FACTS*[2]

In 2010, police officers worked with the San Luis Obispo County Narcotics Task Force in an undercover investigation of marijuana delivery businesses.  Detective Amy Chastain obtained a medical marijuana recommendation under an assumed name.  She used an apartment in the city of San Luis Obispo for purposes of the investigation.

### *Hopeful Remedies - Steven Gordon*

On November 4, 2010, Chastain called Hopeful Remedies, a collective, and arranged for delivery of marijuana to the apartment.  Steven Gordon arrived and identified himself as "Mike."  He verified that Chastain had a physician's recommendation for marijuana.  He asked Chastain to sign a form stating she was part of his collective.  After she signed the form, he sold her one-eighth ounce of marijuana for $50.  Chastain made another one-eighth ounce purchase from Hopeful Remedies on November 17, 2010.  On December 15, 2010, Chastain purchased one-half ounce from Hopeful Remedies for $80.

### *Open Access Foundation - Austin & Sandercock*

On November 4, 2010, Chastain called the Open Access Foundation and requested "a marijuana delivery."  Christopher Austin arrived at the apartment and checked Chastain's driver license and medical marijuana recommendation.  After Chastain completed Open Access Foundation's forms, Austin sold her one-eighth ounce of marijuana for $50.  On November 18, 2010, Chastain purchased another one-eighth ounce of marijuana for $40.  Chastain promised to pay Austin the remaining $10 the next time she saw him.

---

[2] By stipulation of the parties, the facts are taken from police reports.

*West Coast Caregiving Consulting - Hosking*

On November 9, 2010, Detective Chastain arranged to purchase marijuana from West Coast Caregiving and Consulting, an entity owned by David and Valarie Hosking.

Valarie Hosking arrived at Chastain's apartment and checked her driver's license and marijuana recommendation. Hosking asked Chastain to sign a document stating that the Hoskings are Chastain's caregivers. Hosking sold Chastain one-fourth ounce of marijuana for $120. On November 18, 2010, David Hosking sold Chastain one-fourth ounce of marijuana for $110.

*Jury Instruction*

Prior to trial, the trial court ruled that it would give a jury instruction as follows: "Providing money in exchange for harvested marijuana may, in itself, constitute 'associating for the purpose of collectively cultivating marijuana.' Associating for the purpose of collectively cultivating marijuana does not require any prior relationship between the parties."[3]

The People declared they could not proceed under the instruction. The trial court dismissed the cases and the People appeal. (See *People v. Chacon* (2007) 40 Cal.4th 558, 565 [where the prosecution announces it is unable to proceed as a result of a pretrial ruling, the People may appeal the order of dismissal].)

*DISCUSSION*

In November 1996, the voters approved Proposition 215, enacting the CUA, now codified as section 11362.5. The purposes of the CUA are: to ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where recommended by a physician; to ensure such patients and their caregivers are not subject to criminal prosecution; and "[t]o encourage the federal and state governments to

_____

[3] The instruction does not appear of record, but Sandercock and the Austins do not dispute its wording. After oral argument they assert, for the first time in a supplemental brief, that the record is insufficient for a consideration of the instruction. Suffice it to say, their argument is not timely.

3

implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana."  (§ 11362.5, subd. (b)(1)(C).)

The CUA provides that "[s]ection 11357, relating to the possession of marijuana, and [s]ection 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician."  (§ 11362.5, subd. (d).)

In 2003, the Legislature enacted the MMPA (§ 11362.7 et seq.) to clarify the CUA and add provisions that were not included in the CUA.  Here defendants rely on section 11362.775.  That section provides:  "Qualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with identification cards, who associate within the State of California in order to collectively or cooperatively cultivate marijuana for medical purposes, shall not solely on the basis of that fact be subject to state criminal sanctions under [s]ection 11357, 11358, 11359, 11360, 11366, 11366.5, or 11570."

It is a defendant's burden to produce evidence sufficient to raise a reasonable doubt that his or her acts are protected under the MMPA.  (*People v. Mower* (2002) 28 Cal.4th 457, 477, 481.)

Nothing in the CUA or the MMPA authorizes the retail sale of marijuana.  Had the Legislature intended to authorize retail sales, it could have done so.  Instead, it prohibited retail sales.  Section 11362.765, subdivision (a) provides in part, "nor shall anything in this section authorize any individual or group to cultivate or distribute marijuana for profit."  Thus not only must the group or organization be nonprofit, no individual may benefit financially from the cultivation or distribution of marijuana.

Section 11362.775 provides immunity only for patients and caregivers who "associate . . . in order to collectively or cooperatively cultivate marijuana for medical purposes . . . ."  The Legislature did not intend such immunity to apply where the purchaser simply signs a paper stating she is a member of the seller's collective or naming the seller as her caregiver.  Chastain's purchase does not establish she grew or processed

4

the marijuana she purchased, nor that she had any connection with the collective other than to buy its product. We acknowledge, however, the MMPA does not require the patient or caregiver to actually participate in the cultivation. (See *People v. Jackson* (2012) 210 Cal.App.4th 525, 530 [that collective had 1600 members, very few of them who participated in the actual cultivation process, did not prevent defendant from presenting MMPA defense].) Nor does the MMPA require any period of prior association with the collective or cooperative.

The defendants suggest that we look to the California Attorney General's 2008 Guidelines for the Security and Non-Diversion of Marijuana Grown for Medical Use (Guidelines) for help in interpreting the MMPA. The Guidelines provide permissible methods for reimbursement to the cooperative or collective.

Section IVB6 of the Guidelines, page 10, states: "Marijuana grown at a collective or cooperative for medical purposes may be: a) [p]rovided free to qualified patients and primary caregivers who are members of the collective or cooperative; b) [p]rovided in exchange for services rendered to the entity; c) *[a]llocated based on fees that are reasonably calculated to cover overhead costs and operating expenses*; or d) [a]ny combination of the above." (Italics added.)

When a member pays for marijuana, the defendant must show the member paid no more than the member's proportionate share of the actual cost of cultivating and distributing the marijuana, and that there was no profit for the collective, cooperative or any individual. That the sales price is limited to the member's proportionate share of the cost and that no person or entity profited from the sale, are crucial to show that the purchaser was associated for the purpose of collectively cultivating marijuana. This is far different then being associated for the purpose of collective cultivation and ordinary retail sales.

The instruction approved by the trial court contains no such limiting factors. It simply provides that paying for marijuana may "in itself" constitute associating for the purpose of collectively cultivating marijuana. The instruction does not inform the jury of the law's ban on sales for profit and, in effect, allows any entity or

5

person to make a profit with impunity. The law does not sanction sales for profit even between members of the same collective who each have a physician's marijuana recommendation. (§ 11362.775; see also *People v. Solis* (2013) 217 Cal.App.4th 51, 54 [defendant who admitted receiving $80,000 in personal income from marijuana collective not entitled to MMPA instruction]; *People v. Jackson*, *supra*, 210 Cal.App.4th at p. 538 ["there is little doubt the Legislature did *not* intend to authorize [MMPA] profit-making enterprises"]; *People v. Colvin* (2012) 203 Cal.App.4th 1029, 1040-1041, quoting Guidelines § IVB5 at p. 10 ["'[a]ny monetary reimbursement the members provide to the collective or cooperative should only be the amount necessary to cover overhead costs and operating expenses'"].)

The judgment is reversed and the matter remanded for further proceedings.
<u>CERTIFIED FOR PUBLICATION.</u>


GILBERT, P. J.


We concur:


PERREN, J.


HOFFSTADT, J.[*]

---

[*] (Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

6

Barry T. LaBarbera, Judge

Superior Court County of San Luis Obispo

_____

Gerald T. Shea, District Attorney, Jesse Marino, Craig Von Rooyen, Deputy District Attorneys,   for Plaintiff and Appellant.

Laura S. Kelly, under appointment by the Court of Appeal, for Defendants and Respondents Thomas Anthony Sandercock, Jr., Christopher Austin and Amy Austin.

Law Offices of James B. Devine, APC, James B. Devine for Defendants and Respondents Valarie Hosking, David Hosking and Steven Gordon.