Filed 5/7/14  P. v. Jones CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>RICHARD NEWTON JONES,<br><br>    Defendant and Respondent. | 2d Crim. No. B242313<br>(Super. Ct. No. F455621)<br>(San Luis Obispo County) |

The People appeal from the order dismissing the information following the People's declaration of inability to proceed.  (Pen. Code, § 1238, subd. (a)(8).)  The information charged Richard Newton Jones with two counts of selling or transporting marijuana (Health & Saf. Code,[1] § 11360, subd. (a)) and one count of possessing marijuana for sale (§ 11359).  The People requested a dismissal after the trial court denied their motion to preclude Jones from raising the Compassionate Use Act (CUA; § 11362.5) and the Medical Marijuana Program Act (MMPA; § 11362.7 et seq.) as an affirmative defense.  The court also ruled it would instruct the jury on the defense with an instruction submitted by Jones rather than one offered by the People.

---

[1] All further undesignated statutory references are to the Health and Safety Code.

The People contend that Jones is not entitled to assert the CUA and MMPA defense as a matter of law because (1) neither act authorizes the sale of marijuana or "retail marijuana delivery services," and (2) the MMPA does not apply to dispensaries that simply provide marijuana to patients in exchange for money. We affirm.

FACTS AND PROCEDURAL HISTORY

Jones was the owner of Santa Barbara Collective (SBC), a medical marijuana dispensary duly registered as a California corporation. SBC did not have a storefront and operated exclusively as a delivery service. At all relevant times, Jones possessed a valid recommendation for medical marijuana.

In late 2010, the San Luis Obispo Police Department, in conjunction with the now-defunct San Luis Obispo Narcotics Task Force, began an undercover investigation targeting several medical marijuana dispensaries, including SBC. To further that investigation, San Luis Obispo Police Detective Amy Chastain obtained a medical marijuana recommendation under an assumed name and purported to live in an apartment secured by the City of San Luis Obispo.

Detective Chastain called Jones and arranged to have one-eighth of an ounce of marijuana delivered to her on November 10, 2010. Jones notified Chastain that the marijuana would cost $50. When Jones arrived at Chastain's apartment, he asked for a copy of her medical marijuana recommendation. Jones told Chastain he had run out of SBC's membership forms. He then sold Chastain an eighth of an ounce of marijuana for $50. On November 17, 2010, Jones delivered another eighth of an ounce of marijuana to Chastain for $50. Later that same day, he delivered yet another eighth of an ounce of marijuana for $55.

Jones was arrested later that same day as he was driving back to Santa Barbara. The police found individually packaged marijuana and SBC paperwork in Jones's car. Jones told the police he owned SBC and supplied its members with marijuana grown by other members on a non-profit basis.

Prior to trial, the prosecution moved in limine to preclude Jones from presenting an affirmative defense under the CUA and the MMPA. The prosecution

2

claimed the defense did not apply as a matter of law because (1) neither act authorizes the sale of marijuana, by delivery service or otherwise; and (2) there was no evidence that all of SBC's members actually participated in the cultivation of marijuana.

The prosecution also submitted a proposed jury instruction stating that the MMPA defense did not apply unless Jones proved, among other things, that he (1) "joined together with [Chastain] in order to collectively cultivate the marijuana provided to her;" and (2) "did not intend to sell any portion of the marijuana at issue to anyone who did not join with him/her in the cultivation of the marijuana." The instruction further states that "[t]he sale of harvested marijuana between a buyer and seller does not, in itself, constitute 'associating for the purpose of collectively cultivating marijuana'" and that "[n]o individual or group is authorized to cultivate or distribute marijuana for profit." (Fn. omitted.)

Jones countered with his own proposed instruction stating that the MMPA defense did not apply unless he proved: "1. [He] had a valid recommendation from qualified physicians to use marijuana for medical purposes. [¶] 2. [He] operated a collective which is a business or farm or other enterprise which facilitates the collaborative efforts of patients and caregiver members including the allocation of costs and revenues. [Citation.] [¶] 3. [He] reasonably believed that Detective Chastain had a valid physician's recommendation. [¶] 4. [He] reasonably believed that Detective Chastain agreed to be a member of the collective so that [Jones] reasonably expected to receive labor, resources or money from her to help finance the operation so she could receive medical marijuana. [Citations.] [¶] 5. [He] provided the marijuana to Detective Chastain for an amount of money which did not provide [him] with any more than [his] reasonable cost of producing and providing same to members of their collective[.]" The instruction goes on to state: "Providing money in exchange for harvested marijuana may, in itself, constitute 'associating for the purpose of collectively cultivating marijuana.' Associating for the purpose of collectively cultivating marijuana does not require any prior relationship between the parties. [¶] The jury may consider the existence, non-

3

existence, and/or extent of financial records in deciding whether the collective is operating within the law."

The court denied the prosecution's motion and ruled, "if the case were to proceed to trial, the court would use the defendant's instructions rather than the People's to be in conformity with the other courts of our county that have been dealing with the same issue." The prosecution stated it was unable to proceed, and the complaint was dismissed.

## DISCUSSION

The People contend the trial court erred in denying their motion to preclude Jones from asserting the CUA and MMPA as a defense. They claim the defense does not apply as a matter of law because (1) neither act authorizes the sale of marijuana, regardless of profit; (2) Jones gave marijuana to a member of the collective who did not actually participate in the cultivation of the marijuana; and (3) the MMPA does not protect delivery-based marijuana dispensaries, as distinguished from "brick and mortar" dispensaries that operate out of a storefront. None of these claims has merit.

In support of their first claim, the People cite *People ex rel. Lungren v. Peron* (1997) 59 Cal.App.4th 1383, 1389, for the proposition that "[t]he sale and possession for sale of marijuana continue to be proscribed by sections 11360(a) and 11359 following enactment of [the CUA]. The lack of profit to the seller or possessor does not exempt such activities from prosecution . . . ." Cases interpreting the subsequently enacted MMPA make clear, however, that immunity extends to the exchange of marijuana for money so long as no profit is derived from the transaction. (*People v. Urziceanu* (2005) 132 Cal.App.4th 747, 785 ["[the MMPA] represents a dramatic change in the prohibitions on the use, distribution, and cultivation of marijuana for persons who are qualified patients or primary caregivers . . . . Its specific itemization of the marijuana sales law indicates it contemplates the formation and operation of medicinal marijuana cooperatives that would receive reimbursement for marijuana and the services provided in conjunction with the provision of that marijuana"]; see also *People v. Jackson* (2012) 210 Cal.App.4th 525, 536-537 (*Jackson*).)

4

It has also been recognized that the MMPA defense does not require members of a marijuana collective or cooperative to participate in the cultivation of the marijuana. (E.g., *Jackson, supra,* 210 Cal.App.4th at p. 537; *People v. Colvin* (2012) 203 Cal.App.4th 1029, 1040-1041.) The People fare no better in claiming that the MMPA does not apply to mobile dispensaries. The MMPA itself, and the Attorney General's guidelines for its enforcement, expressly contemplate the protection of mobile dispensaries. (§ 11362.768, subd. (e); *Jackson*, at p. 537; *City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1085, fn. 17.) In light of these express references, we are unpersuaded by the People's assertion that "[t]he holdings in *Colvin* and *Jackson* should not be extended to operators of marijuana delivery services like the respondent in this case."

## DISPOSITION

In a recent appeal involving the same proposed jury instructions, we reversed and remanded after finding the defense instruction might be construed to allow the sale of marijuana for profit. (*People v. Sandercock* (Mar. 17, 2014, B238858) [nonpub. opn.].) Here, the People make no argument regarding the instructions and merely ask us to reverse the order dismissing the action and remand on a finding "that the collective or cooperative cultivation defense does not apply to [Jones] as a matter of law[.]" We decline the People's invitation and affirm the order of dismissal. Accordingly, the People are precluded from refiling the case. (Pen. Code, § 1238, subd. (b); *People v. Chacon* (2007) 40 Cal.4th 558, 565.)

The judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:


GILBERT, P. J.

YEGAN, J.

5

Michael J. Duffy, Judge

Superior Court County of San Luis Obispo

_____


Gerald T. Shea, District Attorney, Jesse Marino, Deputy District Attorney, for Plaintiff and Appellant.

Laura S. Kelly, under appointment by the Court of Appeal, for Defendant and Respondent.