Filed 4/7/16  P. v. Renaud CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TIMMY RENAUD,<br><br>    Defendant and Appellant. | C076777<br><br>(Super. Ct. No. 13CR21138)<br><br>ORDER MODIFYING OPINION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

The opinion of this court filed March 14, 2016, in the above entitled case is modified as follows:

On page 2 of the second paragraph, seventh line down, (fourth sentence), the sentence that starts with "The officers also found . . . ." delete the word "valid."

1

This modification does not change the judgment.

BY THE COURT:


/s/                         
Robie, Acting P. J.


/s/                         
Butz, J.


/s/                         
Renner, J.

Filed 3/14/16  P. v. Renaud CA3 (unmodified version)

<u>NOT</u> <u>TO</u> <u>BE</u> PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

| | |
|---|---|
| THE PEOPLE, | C076777 |
| Plaintiff and Respondent, | (Super. Ct. No. 13CR21138) |
| v. | |
| TIMMY RENAUD, | |
| Defendant and Appellant. | |

A jury found defendant, Timmy Renaud, guilty of cultivating marijuana (Health & Saf. Code,[1] § 11358).  On appeal, defendant argues the trial court erred in failing to instruct the jury, sua sponte, on the defense of cooperative cultivation.  We affirm.

---

[1]     Undesignated statutory references are to the Health and Safety Code.

1

BACKGROUND

Amador County narcotics enforcement officers conducted a warrant search of a secluded and supposedly vacant lot in Sutter Creek. Neighbors had reported hearing generators running at all hours and other suspicious activity.

At the site, the officers found a marijuana growing operation with a 22-foot trailer, a generator-powered water pump, a greenhouse with 15 marijuana plants, and around 40 plants drying under black plastic. The growing plants were estimated to eventually yield about a pound of processed marijuana each. The drying plants were conservatively estimated to yield a total of 35 pounds of processed marijuana. The officers also found four gallon-sized bags of processed marijuana, a pay/owe ledger, hundreds of plastic baggies of various sizes, and a folder with "dozens and dozens and dozens" of valid Proposition 215 recommendations.

The officers found three people at the site: defendant, a woman named Ashley, and her boyfriend. The property's owner (who was away) lived out-of-town and had agreed to let them grow there. The property owner, Ashley, and defendant all had Proposition 215 recommendation cards, and the property owner had told Ashley he had a grower's license.[2] The owner had provided the many 215 recommendations, which were for patients of his "cooperative type clinic."

Defendant told the officers that he was growing the marijuana for personal consumption. He said his recommendation allowed him to have 10 pounds of marijuana. When the officers challenged him on whether he could consume that much, defendant said, "I smoke it with my buddies" and said he gives away the extra to his buddies. He denied selling marijuana to collectives: "No. I'm growing it for myself."

_____

[2]     The police could not contact the owner, but Ashley testified the owner had told her he had a recommendation card.

2

When asked which plants belonged to him, and which belonged to the owner, or Ashley, defendant replied: "You know, we didn't talk about it, we don't know about it yet, you know what I mean?" As to whether the owner received rent in exchange for allowing the grow, defendant said: "he told us uh, he would let us grow and he would, he gots [*sic*] like a shop or something down there, I don't, I don't know, I don't even know the story."

At trial, Ashley (who pled guilty to cultivating marijuana) testified for the prosecution. She said three people were involved in the grow: herself, defendant, and the property owner. She knew the property owner "through another friend [who] had worked with us at the clinic."[3] The grow had been the property owner's idea. Defendant was brought in to help with the plant's watering, caretaking, and harvesting. Ashley and defendant would each receive 24 plants; the property owner would get the rest.

Ashley testified that she had invested $25,000 into the grow. She would give what she did not consume from her share to the clinic she worked at; the clinic would sell it, and she would keep the money. She expected to earn, and keep, $15,000 from the sale: "It helps me take care of my life. I have to pay -- I have a son I mean."

She, however, admitted to selling some marijuana directly to people with recommendation cards. She would sell an eighth of an ounce for $60 or more. She also did not think the grow was legal: "I kind of figured being out here wasn't [legal] because the way it was -- there was no clinics out here. There was no -- the hydroponics store is far away and then we heard what had happened out here in the past and kind of put two and two together, no, it was not legal out here." Ashley believed the property owner had "a lot of marijuana grows all over the place." The owner, however, had told her he thought the grow was okay; he said: "I know all the rules because I have an attorney."

---

[3] Defendant and Ashley were acquaintances from work.

3

At trial, defendant did not testify, nor did the defense offer witnesses. Defense counsel argued defendant was never involved with Ashley and the property owner's illegal activity. Rather, defendant was involved solely to get marijuana for his own use, of which he was allowed 10 pounds.

The jury was instructed on the compassionate use defense. In relevant part: "Possession or cultivation of marijuana is lawful if authorized by the Compassionate Use Act. The Compassionate Use Act allows a person to possess or cultivate marijuana for personal medical purposes or as the primary caregiver of a patient with a medical need when a physician has recommended such use. The amount of marijuana possessed or cultivated must be reasonably related to the patient's current medical needs. The People have the burden of proving beyond a reasonable doubt that the defendant was not authorized to possess or cultivate marijuana for medical purposes. If the People have not met this burden, you must find the defendant not guilty of this crime."

The jury found defendant guilty of cultivating marijuana (§ 11358), but not guilty of possessing marijuana for sale (§ 11359).

## DISCUSSION

Defendant now contends the trial court erred in failing to instruct the jury, sua sponte, on the cooperative cultivation defense. Under that defense, qualified patients and caregivers may collectively or cooperatively cultivate marijuana for medical purposes, for the benefit of the members, but not for profit. He argues substantial evidence gave rise to a sua sponte duty to instruct, in that there was ample evidence he had organized with qualified persons to cultivate marijuana. We disagree.

### I

### *The Medical Marijuana Program Act*

The Medical Marijuana Program Act recognizes a qualified right to collectively cultivate medical marijuana: "[Q]ualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with

4

identification cards, who associate within the State of California in order collectively or cooperatively to cultivate cannabis for medical purposes, shall not solely on the basis of that fact be subject to state criminal sanctions under Section 11357, 11358, 11359, 11360, 11366, 11366.5, or 11570." (§ 11362.775, subd. (a).)

The collective cultivation defense requires that a defendant show that members of the collective or cooperative: (1) are qualified patients who have been prescribed marijuana for medicinal purposes; (2) collectively associate to cultivate marijuana; and (3) are not engaged in a profit-making enterprise. (*People v. Jackson* (2012) 210 Cal.App.4th 525, 529.) Not all members need participate in the cultivation process, they may instead provide financial support by buying marijuana from the organization. (*Id.* at pp. 529-530.)

Beyond that, exact requirements are sparse. "Although section 11362.775 clearly provides for collective cultivation, it does not specify what the Legislature meant by an association of persons who engage in collective or cooperative cultivation for medical purposes. For example, there is no mention of formality requirements, permissible numbers of persons, acceptable financial arrangements, or distribution limitations. Not surprisingly, therefore, over the past decade there has been considerable litigation as to how the collective cultivation provision should be applied." (*People v. Orlosky* (2015) 233 Cal.App.4th 257, 267-268.) Accordingly, in deciding whether a collective meets the requirements of the Medical Marijuana Program Act, the model jury instructions provide that the jury must consider various factors -- the size of the collective's membership, volume of purchases, level of member's participation, whether the collective was formally established as a nonprofit, presence of financial records, accountability of the collective to its members, and evidence of profit or loss. (CALCRIM No. 3413.) It is not instructed that any factors are dispositive.

Section 11362.81, subdivision (d), provides: "[T]he Attorney General shall develop and adopt appropriate guidelines to ensure the security and nondiversion of marijuana grown for medical use by patients qualified under the Compassionate Use Act of 1996." In August 2008, the California Attorney General issued Guidelines for the Security and Non-diversion of Marijuana Grown for Medical Use <http://ag.ca.gov/cms_attachments/press/pdfs/n1601_medicalmarijuanaguidelines.pdf> (as of Mar. 11, 2016).) The document offers various guidelines for the operation of collectives and cooperatives. For instance, collectives (unlike cooperatives) may not need to organize as some form of business, but they should still not purchase or sell to nonmembers but rather provide a means for facilitating or coordinating transactions between members. (*Id.* at p. 8.) Although the guidelines are not binding, we give them considerable weight. (*Qualified Patients Assn. v. City of Anaheim* (2010) 187 Cal.App.4th 734, 748.)

A trial court must instruct, sua sponte, on a particular defense only if the defendant appears to be relying on the defense, or there is substantial evidence supportive of the defense and the defense is not inconsistent with the defendant's theory of the case. (*People v. Martinez* (2010) 47 Cal.4th 911, 953) " 'Substantial evidence is "evidence sufficient 'to deserve consideration by the jury,' " ' " it is not any evidence " ' " 'no matter how weak.' " ' " (*People v. Wilson* (2005) 36 Cal.4th 309, 331.)

II

*Substantial Evidence Did Not Support The Collective Cultivation Defense*

Here, there was no error in not instructing on the collective cultivation defense. Defendant did not rely on that defense at trial, nor did substantial evidence support the instruction.

The evidence fell short of raising reasonable doubt that defendant was cultivating marijuana for a lawfully operating collective. Indeed, neither defendant nor Ashley appeared to have the slightest inkling they were part of a collective. Defendant

6

maintained he was growing for his own consumption and sharing what he did not consume "with his buddies." When asked if the property owner received rent in exchange for permitting the grow, defendant responded: "[the owner] told us uh, he would let us grow and he would, he gots [*sic*] like a shop or something down there, I don't, I don't know, I don't even know the story." Ashley, for her part, thought the grow was illegal, explaining there were "no clinics out here," and she subsequently pled guilty to cultivating marijuana.

Defendant argues on appeal that he organized with qualified patients to cultivate marijuana. Defendant and Ashley had recommendation cards, and Ashley testified that the owner had a grower's license and ran a "cooperative type of clinic" where he served "patients." Defendant asserts "[t]here was also evidence that other persons were involved, albeit not in the direct cultivation of the marijuana, and evidence they were also qualified." This statement is a reference to the fact that officers found a number of recommendation cards and Ashley testified that the cards belonged to patients at the owner's clinic. But if this is the scope of defendant's alleged cooperative, he lacks sufficient evidence to prove it was lawful. When the jury is instructed on the collective cultivation defense, "the jury must determine whether the collective [the defendant] participates in is a profit-making enterprise and further that in resolving that question, it should consider, in addition to other evidence of profit or loss, the size of the collective's membership, the volume of purchases from the collective and the members' participation in the operation and governance of the collective." (*People v. Jackson* (2012) Cal.App.4th 525, 530.) Here there is no evidence regarding any of these factors or whether the alleged cooperative made a profit. Thus, substantial evidence did not give rise to a duty to instruct the jury on the collective cultivation defense.

## DISPOSITION

The judgment is affirmed.

/s/<br>Robie, Acting P. J.

We concur:

/s/
Butz, J.

/s/
Renner, J.

8