Filed 3/23/16  P. v. Dubrawski CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT CHARLES DUBRAWSKI, JR.,<br><br>    Defendant and Appellant. | A143359<br><br>(Lake County<br>Super. Ct. No. CR934847) |

Robert Charles Dubrawski, Jr., offered to sell marijuana to a police officer posing as an acquaintance.  Dubrawski claimed at trial that he had grown the marijuana for a collective of medical marijuana patients and was attempting to sell the excess from his crop to another collective.  The jury rejected the defense.  Dubrawski seeks reversal based on inadequate jury instructions.  We conclude that any instructional error was nonprejudicial and affirm.  Dubrawski also challenges three conditions of his probation.  Challenges to two of the conditions are forfeited due to Dubrawski's failure to object below, but the third condition must be modified to cure constitutional vagueness.

## I.    BACKGROUND

Dubrawski was charged by felony information with transportation or sale of marijuana (Health & Saf. Code, § 11360, subd. (a))[1] and possession of marijuana (§ 11359).  The case was tried to a jury.

---

[1] Undesignated statutory references are to the Health and Safety Code.

A.      *Trial Evidence*

Dennis Keithly, a narcotics detective for the Lake County Sheriff's Office, was involved in the February 19, 2014 arrest of Chris Vasquez, who was found with methamphetamine, about $16,000 in cash, and a cell phone.  Keithly discovered text messages on the cell phone that Keithly believed were arrangements for a meeting to purchase marijuana.  He called the number associated with the texts, pretending to be Vasquez, and recorded his phone conversation with "Bob."  In the recording, which was played for the jury, Keithly told Bob he was running late and said, "I scraped together a few more thousand. [¶] . . . [¶] . . . [W]hat do you think we can do?"  Bob answered, "[C]om[e] on we need communication man . . . 'cause . . . you told me you wanted a ten pack.  I went and I got 'em.  You were suppose to . . . like a third person or some, you had some guy you know was suppose to come up."  Keithly said he had $3,000 and Bob said the price was "1.2 so, you know like twelve hundred a pop," which Keithly testified meant $1,200 per pound.  Keithly offered the $3,000 for three pounds, but Bob insisted on receiving $1,200 per pound.  Keithly said he would try to come up with another $600 and come by.

Keithly went to Dubrawski's home with a search warrant.  When confronted, Dubrawski admitted he had the phone conversation with Keithly and cooperated with Keithly's investigation.  Dubrawski directed Keithly to 10-pounds of marijuana in a box located in a shed attached to the residence—the "ten pack" he had intended to sell to Vasquez.  Inside the house, Keithly found items he considered indicia of marijuana sales.  In a room containing an expired identification card for Dubrawski and pictures of Dubrawski, Keithly also found a United States mail or United Parcel Service packing list and receipt, another 1.1 pounds of marijuana, and a scale.  In another room, Keithly found processing materials:  several pairs of scissors, rubber gloves, and bottles of alcohol in a tub located near a pool table that had marijuana trimmings on it.  He also found "expired medical marijuana recommendations" for Dubrawski in the housebut no money or pay/owe sheets.

2

Keithly read Dubrawski his *Miranda*[2] rights and recorded a conversation with him, which was also played for the jury. Dubrawski said he and his roommate used marijuana for medical reasons. Dubrawski grew 36 plants of marijuana "for mostly my housemate and myself" and reaped less than three pounds of marijuana per plant. He personally consumed a lot of marijuana because he ate or used it in a tincture rather than smoking it. He denied that he stored additional marijuana elsewhere, and explained that he falsely told Keithly on the phone that he got the ten pack from some other location because he feared being robbed if people thought he stored marijuana at his home. He was particularly suspicious of Vasquez because "this is my first time dealing with him" and "I think he's on the shit," meaning methamphetamine. Dubrawski claimed he did not know it was illegal to sell the marijuana. He was selling it because he needed money, apparently for a new car. He did not have a job other than caring for the property where he lived, for which his rent was waived, and he was on food stamps. When Keithly asked, "Is twelve hundred the usual price you get for it?" Dubrawski responded, "Whatever you get." Keithly testified that $1,200 per pound was the normal street price for marijuana and the wholesale price would be $800 to $600 less per pound. However, all prices depended on the time of year, supply and demand, and the particular strain of marijuana.

At trial, Dubrawski testified that the ten pack came from 36 plants that he cultivated for a group of *six* persons (including himself, but not Vasquez) with medical marijuana recommendations, two of whom lived with Dubrawski. Dubrawski's own medical marijuana recommendations had lapsed at the time of his arrest, but his symptoms (anxiety, insomnia and arthritis) continued, and he renewed the recommendation before trial. Dubrawski considered the group of six a collective, but it was not registered as such and the group members had no written agreement among themselves and did not pay Dubrawski for their share of the marijuana. Dubrawski did

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

3

most of the work cultivating the marijuana, and in the most recent growing season he had harvested about 36 pounds, which he processed at home.

Dubrawski intended to sell the 10 pounds of marijuana in order to "pay for soil and nutrients and for next season." He claimed the group broke even on the marijuana parcel, but he could not estimate his total costs for the last season and had not retained his receipts. He purchased plants for about $10 to $15 each, grew them under artificial lights for about 15 hours, and planted them in dirt supplemented with purchased soil (costing about $120 to $150) and hundreds of dollars worth of nutrients. Other costs included supporting himself during the four-month growing season: he worked at least 40 hours a week on his caretaking activities, spending about a third of his time on the marijuana crop. As evidence that he was not making a profit on the marijuana cultivation, he cited the poor condition of his vehicle and only $300 in his bank account at the time of his arrest.

Dubrawski testified that he planned to sell Vasquez the ten pack for $1,200 a pound on the understanding that Vasquez was going to "broker it to a club," a dispensary, collective or organization of medical marijuana patients. He knew Vasquez through Vasquez's mother and had met him twice socially. When asked on cross-examination what collective he believed Vasquez belong to, Dubrawski said, "I don't know and I don't want to know." Dubrawski denied that he ever sent marijuana through the United States mail. The mailing receipt found in his house was from a package he mailed to his 12-year-old daughter and the mailing label was for a friend to whom he owed a debt (jam and sourdough bread) for losing a football bet. When asked the purpose of the triple beam scale found in his home, Dubrawski said, "I really don't recall. That thing is so old and . . . usually it's used for baking . . . ." He denied using it to weigh marijuana.

Chris Conrad, who testified as a defense expert on marijuana cultivation,[3] opined that "possession of ten pounds of . . . bud in [the] context of a grow of 36 plants with five

---

[3] Conrad testified about his experience with marijuana cultivation, but he was never expressly accepted as an expert by the trial court. Conrad proceeded to testify generally about marijuana cultivation without objection.

consumers" would not raise an inference of intent to sell. For multi-year cultivation, overhead expenses included the cost of renting and maintaining the property year-round, the cost of the caretaker's labor, the cost of supporting the caretaker during the growing season, the cost of 25 percent additional starter plants that die due to disease, a half-cubic yard of amended soil per plant at a cost of about $60 a cubic yard, and transportation costs. Many factors affected yield, including location, type of plant, and skill of the grower, but according to a 1992 federal study, the average yield from a plant was four ounces. Conrad testified that medical marijuana patients commonly smoke about three pounds of marijuana a year (about five marijuana cigarettes a day) or eat about 12 to 19 pounds a year. He further testified that dispensaries commonly purchase marijuana through a member who acts as a buyer or agent or through independent brokers, patients who belong to multiple dispensaries and help match dispensaries with sources of marijuana they want. A typical wholesale price for marijuana sales in the winter was $1,200 per pound.

Keithly testified in rebuttal that marijuana growers in Lake County typically reaped two to five pounds per plant and could reap as much as 15 pounds per plant, depending on the marijuana strain and the skill of the grower. He testified that the average medical marijuana patient in Lake County who smoked marijuana consumed one to two marijuana cigarettes a day, or about one pound a year, although patients who ate the drug would consume more. In his experience, marijuana growing collectives maintained a binder of the collectives' rules, members' medical marijuana recommendations, and laws that allegedly made the collective legal, but he did not find such documentation in Dubrawski's home. Further, only one person other than Dubrawski appeared to be living in the home. Finally, Keithly opined that costs cited by Dubrawski amounted to $5,350 to produce 43 pounds of marijuana, or $124 a pound.

B.    *Jury Instructions*

The court provided the following instruction on Dubrawski's medical marijuana defense: "An offer to sell marijuana [and possession for sale of marijuana] is authorized when qualified patients and/or persons with valid identification cards associate within the

State of California, in order collectively or cooperatively to possess and/or sell marijuana for medical purposes. [¶] The authorization described above does not authorize any individual or group to sell marijuana for profit. [¶] Qualified patient[s] means individuals who have the right to obtain and use marijuana for medical purposes when that medical use has been deemed appropriate and has been recommended by a physician. [¶] The defense must produce evidence tending to show that his offering to sell marijuana and possessing of marijuana for sale was for a medical purpose. [¶] The People have the burden of proving beyond a reasonable doubt that the defendant was not authorized to offer to sell marijuana [or possess marijuana for sale] for medical purposes as described above. If the People have not met this burden you must find the defendant not guilty."

The court further instructed that the charged crimes "require that a defendant act with a specific intent or mental state. The specific intent or mental state required are explained in the instructions for those crimes. [¶] The defendant is not guilty of either of those crimes if he made an honest or good faith mistake about the law if the mistake shows that he did not have the specific intent or mental state required for those crimes. [¶] If you have a reasonable doubt about whether the defendant had the specific intent or mental state required for the crimes . . . you must find him not guilty of those crimes." (CALCRIM No. 3411.)

C.    *Closing Arguments, Verdict, and Sentencing*

In closing, the prosecutor argued there was no reasonable basis for Dubrawski's testimony that he thought Vasquez was buying marijuana for a collective. " 'I don't know and I don't care,' is that a good faith belief that you were doing something that complies with the law?" She also questioned why Dubrawski would fear getting robbed if he thought he was making a legal sale. The prosecutor then questioned the existence of Dubrawski's own collective, noting the lack of recordkeeping and Dubrawski's failure to mention such a collective during his interview with Keithly. Finally, she argued that the sale was impermissibly for profit.

Defense counsel argued Dubrawski was "a naïve, well-meaning person . . . caught in the snare of the misguided war on drugs as applied to marijuana." He argued the

6

prosecution failed to prove that the sale was for profit because it failed to prove the revenue from the sale exceeded the costs of cultivating the marijuana. He argued Dubrawski genuinely believed he was selling to a collective and attributed his "I don't know and I don't want to know" testimony to "a general concern or policy he had about not having information getting out about that kind of stuff, because the word gets around here in Lake County." On rebuttal, the prosecutor again argued there was no evidence Dubrawski had a good faith belief that the sale was legal or that the sale was not for profit.

During deliberations, the jury asked for a replay of the recorded interview between Keithly and Dubrawski. After further deliberations, the jury found Dubrawski guilty on both counts. The court found that the offenses were violations of Dubrawski's probation on a prior offense. The court suspended imposition of sentence and placed Dubrawski on three years of formal probation on condition he serve 180 days in jail. The court also revoked Dubrawski's prior probation and ordered him to serve 270 days in custody, to run concurrently.

## II.    DISCUSSION

A.    *Failure to Instruct on Definitions of Cooperative, Collective, and Profit*

Dubrawski argues the trial court erred in failing to define "cooperative," "collective," and "profit" with respect to his medical marijuana defense.[4] We conclude that Dubrawski forfeited any error by failing to object below, and in any event the alleged

---

[4] The heading to this argument in Dubrawski's brief states the court erred in failing to instruct the jury "that they must unanimously agree" on the elements of profit and Dubrawski's membership in a cooperative or collective. The subheadings and discussion of this issue, however, state that the court erred in failing to define the terms "cooperative," "collective," and "profit." The heading and body of Dubrawski's related ineffective assistance of counsel argument again refers to trial counsel's failure to request a unanimity instruction. However, these references fail to raise the unanimity issue appropriately, and we consider the argument forfeited. (Cal. Rules of Court, rule 8.204(a)(1)(B); see *River West, Inc. v. Nickel* (1987) 188 Cal.App.3d 1297, 1300 & fn. 2 [issue not clearly raised on appeal will not be addressed on the merits].)

7

error was harmless. Because of this lack of prejudice, his related ineffective assistance of counsel claim also fails.

The Compassionate Use Act of 1996 (CUA) (§ 11362.5), which was adopted by voter initiative as Proposition 215, provides that "Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (§ 11362.5, subd. (d).) The later enacted Medical Marijuana Program (MMP) (§ 11362.7 et seq.) provided for issuance of identification cards to persons entitled to CUA protection to preclude *arrest* for certain marijuana-related crimes.[5] (§ 11362.71, subds. (a)(1), (e).) The MMP also provided that "[q]ualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with identification cards, who associate within the State of California in order *collectively or cooperatively to cultivate marijuana for medical purposes*, shall not solely on the basis of that fact be subject to state criminal sanctions under Section 11357, 11358, 11359, 11360, 11366, 11366.5, or 11570." (§ 11362.775, subd. (a), italics added.)[6] To be legal under the MMP, collective or cooperative cultivation and distribution of marijuana must be not for profit. (§ 11362.765, subd. (a); *People v. London* (2014) 228 Cal.App.4th 544, 553–554; *People v. Jackson* (2012) 210 Cal.App.4th 525, 538–539.)

Although the trial court correctly instructed the jury on the aforementioned principles, Dubrawski contends the court should have gone further and defined for the jury three of the relevant terms in the instruction. However, "a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too

_____

[5] Possession of a valid MMP identification card is not, however, a prerequisite to a claim of CUA protection. (§ 11362.71, subd. (f).)

[6] This provision will be superseded by the 2015 Medical Marijuana Regulation and Safety Act (see Bus. & Prof. Code, § 19300 et seq., added by Stats. 2015, ch. 689, § 4) one year after the Bureau of Medical Marijuana Regulation commences issuing licenses. (§ 11362.775, subd. (b).)

general or incomplete unless the party has requested appropriate clarifying or amplifying language." (*People v. Andrews* (1989) 49 Cal.3d 200, 218.) Here, Dubrawski's counsel initially proposed a special instruction that defined or amplified on the terms. The instruction defined a "collective or cooperative" as "a business entity that operates on a non-profit basis for the benefit of its members." The instruction explained that Dubrawski was not guilty if the "collective or cooperative operated on a non-profit basis for the benefit of patients" and Dubrawski "did not make a profit based on any remuneration, financial or otherwise, she [*sic*] received from this collective or cooperative." Dubrawski, however, *withdrew* the proposed instruction and expressly agreed to the instructions that the court provided to the jury. The claim is therefore forfeited.

In any event, the alleged error was harmless. The issue critical to Dubrawski's medical marijuana defense was not whether *he* belonged to a nonprofit collective, but whether he reasonably believed he was making a lawful sale to Vasquez. First, Dubrawski has not shown, even assuming Vasquez represented another collective, that the sale would have been lawful. The plain language of the MMP immunizes collectives from criminal prosecution simply for "cultivation" (§ 11362.775, subd. (a)) and "distribution" (see § 11362.765, subd. (a)), but at the direction of the Legislature, the Attorney General has adopted guidelines for lawful collective cultivation and distribution (Cal. Atty. Gen., Guidelines for the Security and Non-diversion of Marijuana Grown for Medical Use (Aug. 2008) <http://ag.ca.gov/cms_attachments/press/pdfs/n1601_medicalmarijuanaguidelines.pdf> [as of Mar. 21, 2016] (Guidelines)), which are entitled to deference by this court (*People v. Hochanadel* (2009) 176 Cal.App.4th 997, 1011). The Guidelines permit the exchange of marijuana to collective members for cash (i.e., sales) if the amount paid is reasonably calculated to cover the collective's overhead costs and operating expenses. (Guidelines, § IV.B.6(c), p. 10.) However, sales to nonmembers are expressly prohibited: "Collectives and cooperatives should acquire marijuana only from their constituent members . . . . Nothing allows marijuana to be purchased from outside the collective or cooperative for distribution to its members. Instead, the cycle

9

should be a closed-circuit of marijuana cultivation and consumption with no purchases or sales to or from non-members. . . . [¶] . . . [N]othing allows individuals or groups to sell or distribute marijuana to non-members." (Guidelines, § IV.B.4-5, p. 10.) Appellate courts have similarly held that sales outside the collective are prohibited. (*People v. Anderson* (2015) 232 Cal.App.4th 1259, 1277 ["[t]hese cases endorse a conception of a medical marijuana collective . . . according to which . . . all the buying and selling is done on a nonprofit basis within the collective . . . [and] there are no transactions with nonmembers"].) Dubrawski cites no contrary legal authority.[7] Under the Guidelines, Dubrawski's sale to Vasquez would be unlawful even if Vasquez belonged to another collective.

Second, even if Dubrawski's asserted interpretation of the MMP were correct, it is not reasonably probable that a properly instructed jury would find that Dubrawski reasonably believed that Vasquez was a member of another collective. Dubrawski testified at trial that he believed Vasquez was going to "*broker* [the marijuana] to a club," i.e., a dispensary, collective or organization of medical marijuana patients. (Italics added.) He did not testify that he believed Vasquez *represented* a collective (i.e., that Dubrawski was selling *to* a collective). Moreover, when the prosecutor asked Dubrawski what collective he thought Vasquez belonged to, Dubrawski responded, "I don't know and I don't want to know," undermining the suggestion that he could have believed in good faith the sale was lawful. During the recorded phone conversation, Dubrawski mentioned "a third person" and "some guy" who was supposed to give Vasquez purchase money for the marijuana; he did not refer to a collective or dispensary. During his testimony, Dubrawski said he knew Vasquez through his mother and had only met him twice socially. He did not provide any factual foundation for his espoused belief that

---

[7] Dubrawski's "expert's" testimony suggested that marijuana could be transferred between collectives by way of members belonging to more than one collective. Conrad's legal opinion was, however, irrelevant. Dubrawski also clearly testified that Vasquez was not a member of Dubrawski's collective, so this hypothetical exception, even if valid, would not assist him.

Vasquez belonged to a collective. During the recorded interview, Dubrawski claimed *generally* that he did not know the sale of marijuana to Vasquez would be illegal, but he never claimed he believed he was selling the marijuana to another collective. On the contrary, Dubrawski expressed concern that Vasquez was on methamphetamine and might rob him—details less consistent with a legal sale than an illegal one. Dubrawski told Keithly he was selling the marijuana for as much as he could get because he needed money to live on. He never claimed he was selling excess beyond the needs of the collective to cover the costs of the cultivation. Further, he responded to Keithly's question about his "usual" price without correcting the clear implication that selling marijuana was a regular activity for Dubrawski. On this record, any alleged error in the jury instructions was not prejudicial.

Because the alleged failure to instruct was not prejudicial, we also reject Dubrawski's argument that his counsel was ineffective in failing to request the instructions. (See *People v. Waidla* (2000) 22 Cal.4th 690, 719 [consideration of deficient performance of counsel unnecessary where no prejudice is found]; *id.* at p. 718 [prejudice is the reasonable probability of an adverse effect on case outcome].)[8]

B.      *Failure to Request Mistake of Fact Instruction*

Dubrawski argues his counsel rendered ineffective assistance because he failed to request a mistake of fact instruction to bolster Dubrawski's defense. We conclude the instruction was inapplicable on the facts of this case.

"To establish ineffective assistance under the Sixth Amendment's counsel clause, [a defendant] must demonstrate both deficient performance under an objective standard of professional reasonableness and prejudice under a similarly objective standard of reasonable probability of an adverse effect on the outcome. [Citation.] To establish

---

[8] While we find Dubrawski's alleged ineffective assistance of counsel claim fails for lack of a showing of prejudice, we agree with the People that defense counsel may well have concluded that the originally imposed clarifying instruction would only highlight the lack of evidence that Vasquez was a member of a cooperative or collective.

11

ineffective assistance under the counsel clause of article I, section 15 of the California Constitution, he must do the same." (*People v. Waidla, supra,* 22 Cal.4th at p. 718.)

"[D]efense counsel has a duty to request all instructions that are necessary to explain the legal theories of defense [citation]. If the defendant had an honest and reasonable belief in the existence of circumstances, which, if true, would make the act an innocent act, the mistake of fact defense applies. [Citation.] A mistake of fact occurs when a person understands the facts to be other than what they are. [Citation.] '. . . The defense arises only where the defendant misperceives an objective state of existing fact . . . .' ' " (*People v. Orlosky* (2015) 233 Cal.App.4th 257, 275.) "In assessing the evidence to determine whether to give an instruction, the trial court should not measure the substantiality of the evidence by weighing the credibility of the witnesses. That duty is within the exclusive province of the jury. However, the court need not give the instruction if the evidence is minimal and insubstantial." (*People v. Russell* (2006) 144 Cal.App.4th 1415, 1430.)

Dubrawski argues that the mistake of fact instruction was relevant to several issues: whether he belonged to a qualified collective; whether the marijuana he planned to sell was the excess of his collective's harvest; whether he understood the marijuana sale to Vasquez was a sale to a collective; and whether he was "permitted" to sell the marijuana to Vasquez. Even if the instruction was relevant to the alleged collective qualification and harvest excess, any deficient performance by Dubrawski's counsel with respect to these issues was not prejudicial for the reasons discussed regarding the other alleged instructional error. Also for those same reasons, evidence that Dubrawski understood the sale to Vasquez was a sale to a collective was "minimal and insubstantial." (*People v. Russell, supra,* 144 Cal.App.4th at p. 1430.) His evidence did not merit the instruction, and an erroneous failure to give it would not have resulted in prejudicial error. Finally, any mistake Dubrawski may have made as to whether he was "permitted" to sell the marijuana to Vasquez would have been a mistake of law, on which the jury was properly instructed. (See *People v. Urziceanu* (2005) 132 Cal.App.4th 747,

12

776 [erroneous belief a sale was lawful under CUA was mistake of law, not fact].) There was no error.

C.  *Probation Conditions*

Dubrawski challenges three of his conditions of probation. We conclude two of his claims are forfeited for failure to object below and the third condition requires modification.

"[C]ourts possess broad discretion in determining suitability for probation and the selection of probation conditions. (Pen. Code, § 1203, subd. (b); [citation].) 'A condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." ' (*People v. Lent* (1975) 15 Cal.3d 481, 486, fn. omitted.) [¶] A probation condition is constitutionally overbroad when it substantially limits a person's rights and those limitations are not closely tailored to the purpose of the condition. [Citation.] It is not enough to show the government's ends are compelling; the means must be carefully tailored to achieve those ends." (*People v. Harrisson* (2005) 134 Cal.App.4th 637, 641–642.)

A challenge to a probation condition as unreasonable under *People v. Lent, supra,* 15 Cal.3d 481, cannot be raised on appeal unless an objection was raised in the trial court. However, an objection on constitutional grounds such as overbreadth or vagueness may be raised for the first time of appeal if it presents a pure question of law that can be decided without reference to the sentencing record in the trial court. (*In re Sheena K.* (2007) 40 Cal.4th 875, 885, 889.) We review reasonableness challenges for abuse of discretion and constitutional challenges de novo. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)

1.  *Maintain Gainful Employment*

Dubrawski first challenges the condition that he "maintain full time, gainful employment except when prevented from doing so due to physical/mental limitations verified by written documentation, or any custody time ordered by the court, or as a result

13

of any residential drug treatment requirements that may be imposed by the drug treatment provider or the probation officer." This argument is forfeited.

Dubrawski purports to challenge this condition on constitutional grounds, but he identifies no constitutional right allegedly infringed. He notes that a violation of this condition could lead to a loss of his liberty, suggesting violation of due process rights, but loss of liberty is true of any probation condition and this fact alone does not implicate the *In re Sheena K.* exception to forfeiture. Dubrawski's substantive argument regarding the challenged condition is instead a reasonableness argument based on *People v. Lent, supra,* 15 Cal.3d 481: he argues the condition is not reasonably related to his offense or to future criminality. However, this argument is forfeited by failure to make any contemporaneous objection. In any event, Dubrawski's claim that the condition fails to account for "ordinary and expected unemployment" that might occur despite Dubrawski's good faith efforts to seek and maintain a job is misplaced. It would be an abuse of discretion for the trial court to revoke probation based on a circumstance beyond the probationer's control. (See *People v. Zaring* (1992) 8 Cal.App.4th 362, 377–379.)

2. *Prohibition on Possession of Scales*

Dubrawski next challenges the condition that he "not possess . . . any scales or weighing devices denominated in units of grams or pounds." This claim too is forfeited.

Again, Dubrawski purports to challenge the condition on constitutional grounds but fails to identify an infringed constitutional right. He complains that the condition unreasonably prohibits his possession of a bathroom scale, but this is a challenge that is forfeited by his failure to raise an objection below. In any event, it is not an abuse of discretion to prohibit a defendant convicted of drug sales from owning materials commonly used in such sales (including zip-lock bags), even if such restrictions make other aspects of the defendant's life less convenient.

3. *No Involvement with Marijuana Cultivation or Distribution*

Dubrawski next challenges the condition that he "not be involved in the cultivation, harvesting, or distribution of marijuana. The defendant will not be present, involved, or [*sic*] transporting of goods and equipment to or from marijuana cultivation

14

sites.  The defendant will not possess more than 28.5 grams of marijuana on his person, at his residence, or in his vehicle" (Condition No. 10).  We agree the first two sentences of the condition are impermissibly vague and must be modified.

Because Dubrawski challenges Condition No. 10 on the ground that it is unconstitutionally vague, the claim is not forfeited by his failure to raise an objection below.  "[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.'  [Citation.]  The rule of fair warning consists of 'the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders' [citation], protections that are 'embodied in the due process clauses of the federal and California Constitutions.  [Citation.]'  [Citation.] . . . [¶] A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness."  (*In re Sheena K., supra,* 40 Cal.4th at p. 890.)

Dubrawski first argues the word "involved" is too broad to provide fair notice of what conduct is prohibited.  We agree.  Dubrawski specifically complains that it is not clear whether this condition prohibits him from obtaining marijuana for his personal medical use from a collective dispensary, which arguably would "involve" him in distributions within the collective.  The People contend such conduct is impliedly permitted by another term of the same probation condition that allows him to possess up to 28.5 grams of marijuana.  Yet another probation condition (No. 9) allows him to possess marijuana with "legal authorization."  We do not agree that the *implications* of these provisions permitting *possession* sufficiently clarify the means by which Dubrawski may *obtain* medical marijuana while on probation.  The probation conditions are obviously not coterminous with legal restrictions on medical marijuana sales.  Given that collectives are statutorily defined as *collectively* cultivating marijuana, Dubrawski reasonably questions whether any participation in a collective (including a dispensary) would "involve" him in the cultivation of marijuana within the meaning of the probation condition.  To remediate this vagueness problem, we order the first two sentences of the

15

condition modified to read: "The defendant will not *personally participate* in the cultivation, harvesting or distribution of marijuana *except by obtaining from a dispensary marijuana for his own personal use as permitted by law*. The defendant will not be present at marijuana cultivation sites and will not *personally participate* in transportation of goods and equipment to and from such cultivation sites."

Dubrawski further challenges Condition No. 10 because it lacks a personal knowledge requirement. The People agree that a personal knowledge requirement should be implied into the condition, but argues it is unnecessary for this court to modify the condition to make such a requirement express. As we are ordering the condition modified in any event, we shall incorporate a personal knowledge requirement in the modification. We order the relevant provisions of Condition No. 10 to be further modified to read: "The defendant will not *knowingly* personally participate in the cultivation, harvesting or distribution of marijuana except by obtaining from a dispensary marijuana for his own personal use as permitted by law. The defendant will not *knowingly* be present at marijuana cultivation sites and will not *knowingly* personally participate in transportation of goods and equipment to and from such cultivation sites."

### III.    DISPOSITION

The judgment and sentence are affirmed except that Condition No. 10 of Dubrawski's terms of probation is ordered modified to read: "The defendant will not knowingly personally participate in the cultivation, harvesting or distribution of marijuana except by obtaining from a dispensary marijuana for his own personal use as permitted by law. The defendant will not knowingly be present at marijuana cultivation sites and will not knowingly personally participate in transportation of goods and equipment to and from such cultivation sites. The defendant will not possess more than 28.5 grams of marijuana on his person, at his residence, or in his vehicle."

16

_____
BRUINIERS, J.

WE CONCUR:


_____
JONES, P. J.


_____
SIMONS, J.




A143359

17